605 A.2d 337

COMMONWEALTH of Pennsylvania

v.

Jason EICHER, Appellant.

Superior Court of Pennsylvania.

Argued Oct. 24, 1991.

Filed Jan. 29, 1992.

236

242

Kim W. Riester, Pittsburgh, for appellant.

Scott A. Bradley, Asst. Dist. Atty., Pittsburgh, for Com., appellee.

Before CIRILLO, FORD ELLIOTT and BROSKY, JJ.

BROSKY, Judge:

This is an appeal from the judgment of sentence entered following appellant's convictions for multiple counts of possession of marijuana and cocaine,[1] possession of a controlled substance, i.e., cocaine, with the intent to deliver,[2] delivery of a controlled substance, i.e., cocaine,[3] and possession of drug paraphernalia.[4] Appellant presents the following issues and subissues for our review: (1) whether appellant's rights under the Fourth, Fifth and Fourteenth Amendments of the United States Constitution and under Article I, Sections 8 and 9 of the Pennsylvania Constitution were violated in that: (a) the prosecution lacked jurisdiction and authority to conduct investigations, arrests, searches and seizures; and (b) the activities of the drug task force were extraterritorial, illegal and unlawful, and constituted prosecutorial overreaching or entrapment; (2) whether appellant's rights under the Fifth, Sixth and Fourteenth Amendments of the United States Constitution and under Article I, Sections 9 and 10 were violated in that: (a) the Commonwealth failed to divulge the identity and whereabouts of the confidential informant who was an alleged participant in the drug transactions for which appellant was convicted; and (b) the Commonwealth failed to disclose the existence of promises of leniency to the confidential informant; (3) whether appellant's rights under the Fifth Amendment of the United States Constitution and under Article I, Section 9 of the Pennsylvania Constitution were violated by the exe-

1. 35 P.S. § 780–113(a)(31) (possession of a small amount of marijuana) and (a)(16) (possession of a controlled substance). Marijuana is classified as a schedule I controlled substance. 35 P.S. § 780–104(1)(iv). Cocaine is a schedule II controlled substance. 35 P.S. § 780–104(2)(i)4.

2. 35 P.S. § 780–113(a)(30).

3. 35 P.S. § 780–113(a)(30).

4. 35 P.S. § 780–113(a)(32).

cution of a search warrant which contained information. that was obtained in violation of appellant's rights; (4) whether appellant's rights under the Fourth Amendment of the United States Constitution and under Article I, Section 8 of the Pennsylvania Constitution were violated because the search warrant failed to establish probable cause that controlled substances would be located in the premises to be searched; (5) whether appellant's rights under the Fifth Amendment of the United States Constitution and under Article I, Section 9 of the Pennsylvania Constitution were violated as appellant's sentence was based upon sentencing provisions that:

(a) violate Article III, Section 3 of the Pennsylvania Constitution; (b) are vague and fail to give notice; (c) are inconsistent with other statutory provisions and the sentencing guidelines; (d) violate due process of law; (e) violate equal protection; and (f) violate the supremacy clause; (6) whether the doctrine of merger bars multiple sentences for possession of a controlled substance with the intent to deliver and for delivery of that substance from the same source; and (7) whether appellant's rights under the Fifth, Eighth and Fourteenth Amendments of the United States Constitution and under Article I, Sections 9 and 10 of the Pennsylvania Constitution were violated because appellant's sentence was: (a) manifestly excessive; (b) unreasonable under the circumstances; (c) imposed without due regard to overwhelming mitigating factors; (d) based upon improper sentencing considerations such as assigning undue weight to the seriousness of the offense and applying improper forensic arguments, and (e) unreasonably disproportionate to other sentences imposed in the same jurisdiction.[5] For the

5. In reviewing appellant's brief, we observe that the statement of questions contained therein violates the requisites set forth in Pa. R.A.P., Rule 2116(a), 42 Pa.C.S.A. Although this court granted appellant's request for permission to file a brief in excess of the page limitations contained in Pa.R.A.P., Rule 2135(1), 42 Pa.C.S.A., he was not given leave to violate the other rules of appellate procedure. *See Commonwealth v. Higgins*, 346 Pa.Super. 238, 242–243 n. 1, 499 A.2d 585, 587–588 n. 1 (1985), *cert. denied*, 479 U.S. 841, 107 S.Ct. 149, 93 L.Ed.2d 90 (1986). We do not approve of appellant's repetitive and

reasons set forth below, we affirm the judgment of sentence.

Before addressing these issues, it is necessary to recount the relevant facts of this case. The police departments of several municipalities in the South Hills area of Pittsburgh, Pennsylvania formed a special investigative unit known as the South Hills Drug Enforcement Task Force (SHDETF). Whitehall Borough was one of the municipalities that participated in SHDETF. Prior to March 1989, Officer Butelli of the Whitehall police force arrested an individual regarding a drug-related offense.[6] This individual agreed to cooperate with the police and divulged information regarding appellant's narcotics activities in the Borough of Greentree, also a participant in SHDETF. Upon receipt of this tip, Officer Butelli advised the Greentree police chief, Chief Logue, of the suspected illicit drug distribution conducted by appellant, Jason Eicher. In response to this information, Chief Logue requested all municipal police departments affiliated with SHDETF to assist the Greentree police in their investigation of appellant's suspected drug-trafficking.

As a result of Chief Logue's request for assistance, Officer Butelli posed as an undercover drug purchaser and arranged for a drug purchase with appellant through the assistance of a confidential informant. The first purchase occurred at the Greenery, a discotheque located in the

prolix catalogue of errors and direct his attention to the following remarks made by Judge Aldisert of the United States Court of Appeals:

With a decade and a half of federal appellate court experience behind me, I can say that even when we reverse a trial court it is rare that a brief successfully demonstrates that the trial court committed more than one or two errors. I have said in open court that when I read an appellant's brief that contains ten or twelve points, a presumption arises that there is no merit to *any* of them. I do not say that it is an irrebuttable presumption, but it is a presumption that reduces the effectiveness of appellate advocacy. Appellate advocacy is measured by effectiveness, not loquaciousness.

*Commonwealth v. Leib*, 403 Pa.Super. 223, 228–229, 588 A.2d 922, 925 (1991), *quoting United States v. Hart*, 693 F.2d 286, 287 n. 1 (3d Cir.1982) (emphasis in the original).

6. Officer Butelli arrested this individual while he was working in Whitehall Borough as a Whitehall Borough police officer.

Greentree Holiday Inn, on April 3, 1989. At this time, the informant, appellant, and the undercover police officer met inside the Greenery where the informant introduced Officer Butelli to appellant. After talking for a period of time, appellant and Officer Butelli went outside to appellant's vehicle. While inside the vehicle, appellant sold the police officer a bag containing one-eighth (⅛) of an ounce or 3.4 grams of a substance that tested positive for cocaine. The informant was not present during the occurrence of this transaction.

On May 1, 1989, the informant again arranged for Officer Butelli to purchase cocaine from appellant. Appellant and the officer met in the parking lot of the Greenery, following which appellant entered the officer's vehicle and sold him two bags of cocaine. Each bag possessed one-eighth of an ounce, however, the combined amount of cocaine from both bags was found to be 6.9 grams. The informant was not present at any time during this transaction.

Following the second sale of cocaine, appellant gave his telephone number to Officer Butelli. The officer then contacted appellant and arranged for a third purchase of cocaine on May 17, 1989. Appellant had a friend drive him to the parking lot at the Parkway Center Mall, also located in the Borough of Greentree, where he met Officer Butelli. Appellant entered the officer's vehicle and sold the officer a bag containing one-quarter (¼) of an ounce, or 7.1 grams, of cocaine.[7] Appellant also indicated to the officer that he could sell the officer one (1) ounce of cocaine because he (appellant) had that amount in his possession. The informant did not participate in and was not present at any time during the third purchase of cocaine. After exiting the officer's vehicle, appellant was arrested by a team of other

7. It is unclear from the record as to whether this transaction involved the sale of one bag containing ¼ ounce of cocaine, or two bags, each containing ⅛ of an ounce of cocaine. This minor discrepancy need not be resolved as the total amount of cocaine involved in this transaction, i.e., 7.1 grams, is unchanged. The inconsistency therefore has no effect upon appellant's convictions and is irrelevant to our disposition of the appeal.

police officers, including members of the Greentree police force. Appellant was searched upon his arrest and was found to possess an additional 3.5 grams of cocaine.

Following appellant's arrest, Officer Butelli obtained a search warrant for appellant's home, which was located in Robinson Township, another South Hills area municipality. Although Robinson Township is not a participant in SHDETF, the officers who were to conduct the search contacted the Robinson Township police and obtained their consent to execute the search warrant. The Robinson Township police accompanied the other police officers and participated in the search of appellant's home. A small amount of marijuana, drug paraphernalia, and additional cocaine totaling 74.74 grams was discovered during the search of appellant's residence.

The above charges were instituted as a result of the controlled drug purchases and the additional drugs and drug paraphernalia seized from appellant's residence. Numerous pre-trial motions raising most of the issues now before us were filed in the trial court and were denied. A non-jury trial was thereafter held on June 29, 1990. The trial consisted of a series of stipulations as to the evidence which would be presented by the Commonwealth. No other evidence was introduced by either the Commonwealth or appellant. After the entry of the stipulations, appellant was adjudicated guilty of all offenses except for the charge of criminal conspiracy, which was *nol prossed* by the Commonwealth. Appellant's timely filed post-trial motions were subsequently denied by the lower court.

Appellant was sentenced on August 30, 1990 to a term of four (4) to ten (10) years' imprisonment on his conviction for possession of 74.74 grams of cocaine with the intent to deliver. In addition, appellant was sentenced to three concurrent terms of one (1) to seven (7) years' imprisonment for each of his convictions for delivery of cocaine. The sentences on appellant's delivery convictions were to be served consecutively to appellant's prior sentence for possession with the intent to deliver. Consequently, appellant

received an aggregate sentence of five (5) to seventeen (17) years' imprisonment. No further penalties were imposed on appellant's remaining convictions. A timely motion for modification/reconsideration of sentence was filed, but was denied by the sentencing court. This timely appeal was then instituted.

Although appellant has alleged numerous violations of his federal and state constitutional rights, the questions which he presents essentially can be divided into the following four categories: (1) challenges to the constitutionality and authority of the municipal police departments involved in SHDETF to investigate appellant's illegal activities and perform arrests and searches/seizures related thereto; (2) demand for the disclosure of the identity and whereabouts of the confidential informant as well as any promises of leniency or favorable treatment made to the informant; (3) attack on the validity of the search warrant and allegations of error for failure to suppress evidence seized pursuant thereto; and (4) dispute of the legality and discretionary aspects of appellant's sentence. We will consider the issues raised by appellant insofar as they relate to each of these four categories.

The first four issues raised by appellant, or the first three categories described above, all involve errors allegedly committed by the suppression court in denying appellant's omnibus pre-trial motions. In reviewing claims of this type,

> our role is to determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. In making this determination, we may consider only the evidence of the prosecution's witnesses and so much of the evidence as, fairly read in the context of the record as a whole, remains uncontradicted. When the factual findings of the suppression court are supported by the evidence, we may reverse only if there is an error in the legal conclusions drawn from those findings.

*Commonwealth v. Fromal,* 392 Pa.Super. 100, 111, 572 A.2d 711, 717 (1990), *allocatur denied,* 527 Pa. 629, 592 A.2d 1297 (1990). We will review the trial court's disposition of appellant's suppression claims in accordance with this standard.

Appellant first challenges the legality and authority of the municipal police departments to enforce the laws of the Commonwealth and perform the duties ordinarily associated with the office of a municipal police officer. It is unnecessary to our disposition of this appeal to address the constitutional issues pertaining to the validity and power of SHDETF.[8] *See Krenzelak v. Krenzelak,* 503 Pa. 373, 381, 469 A.2d 987, 991 (1983) and *Coatesville Development Company v. United Food & Commercial Workers, AFL–CIO,* 374 Pa.Super. 330, 337, 542 A.2d 1380, 1383 (1988) (*en banc*) (in which the appellate courts have held that the courts should not decide constitutional questions unless absolutely required to do so). We will instead focus our analysis on the propriety of the investigation initiated by Officer Butelli of the Whitehall Borough Police as well as the circumstances surrounding appellant's subsequent arrest and search of his residence by the other municipal police officers.

**8.** Even were we to agree with appellant that SHDETF is not a duly-authorized municipal police entity, the extra-territorial acts of the municipal police departments nevertheless must be examined in light of the Municipal Police Jurisdiction Act (MPJA), 42 Pa.C.S.A. § 8953. Accordingly, if the extra-territorial police conduct in this case falls within one or more of the exceptions of the MPJA, the conduct must be deemed lawful regardless of the status of SHDETF. While we decline to address the validity of SHDETF, we observe that similar organizations have received the express approval of the Pennsylvania Attorney General. *See* Opinion of the Attorney General No. 157, 158, 159–160 (1972) (which advises that a Regional Narcotics Task Force in Allegheny County is lawful and that the Commonwealth and its political subdivisions are obliged to marshal their resources to halt the illegal drug trade). Moreover, there is some evidence that the State Attorney General has approved SHDETF as he has provided it with funds for equipment, training and drug purchases, and also reimburses the municipal police departments for the overtime work provided by their respective officers on SHDETF matters. *See* Suppression Hearing Transcript (SHT), Volume I, 5/31/90, at 15–18 and Volume II, 6/29/90, at 5–6.

All of the police officers who participated in the investigation, arrest and search of appellant's residence were municipal police officers employed by the various municipalities that were requested to assist the Greentree police. Accordingly, the authority of these officers to perform their duties outside of their primary jurisdictions is governed by the Municipal Police Jurisdiction Act (MPJA), 42 Pa.C.S.A. § 8953. Under the MPJA, the municipal police are permitted to engage in extra-territorial functions in six specific circumstances, which are set forth as follows:

(a) **General rule.**—Any duly employed municipal police officer who is within this Commonwealth, but beyond the territorial limits of his primary jurisdiction, shall have the power and authority to enforce the laws of this Commonwealth or otherwise perform the functions of that office as if enforcing those laws or performing those functions within the territorial limits of his primary jurisdiction in the following cases:

(1) Where the officer is acting pursuant to an order issued by a court of record or an order issued by a district magistrate whose magisterial district is located within the judicial district wherein the officer's primary jurisdiction is situated, or where the officer is otherwise acting pursuant to the requirements of the Pennsylvania Rules of Criminal Procedure, except that the service of an arrest or search warrant shall require the consent of the chief law enforcement officer, or a person authorized by him to give consent, of the organized law enforcement agency which regularly provides primary police services in the municipality wherein the warrant is to be served.

* * * * * *

(3) Where the officer has been requested to aid or assist any local, State or Federal law enforcement officer or park police officer or otherwise has probable cause to believe that the other officer is in need of aid or assistance.

(4) Where the officer has obtained the prior consent of the chief law enforcement officer, or a person authorized

by him to give consent, of the organized law enforcement agency which provides primary police services to a political subdivision which is beyond that officer's primary jurisdiction to enter the other jurisdiction for the purpose of conducting official duties which arise from official matters within his primary jurisdiction.

42 Pa.C.S.A. § 8953(a)(1), (a)(3) and (a)(4).[9]

■ In applying the MPJA, we are mindful of the competing goals sought to be achieved by the legislature. On the one hand, the legislature has sought to restrict extra-territorial forays by the police to promote public safety and to foster municipal control over the police. *See Commonwealth v. Merchant*, 528 Pa. 161, —— n. 7, 595 A.2d 1135, 1138 n. 7 (1991). However, the legislature has also recognized the necessity of creating practical exceptions to the otherwise harsh and unworkable rule prohibiting extra-territorial police conduct which would, in the absence of such exceptions, only inure to the benefit of criminals. *Id.*, 528 Pa. at ——, 595 A.2d at 1139. In striving to balance these competing interests, the appellate courts have held that the MPJA should not be rigidly applied but "should be liberally construed to effectuate its purposes". *Id.*, 528 Pa. at ——, 595 A.2d at 1138, *citing Commonwealth v. Ebersole*, 342 Pa.Super. 151, 155, 492 A.2d 436, 438 (1985). Using these principles as a guide, we will respectively review the circumstances surrounding the investigation, arrest and search of appellant and his home.

■ With regard to the investigation conducted by Officer Butelli, we initially observe that investigatory activities are not specifically described as the type of extra-territorial conduct which is prohibited by the MPJA. However, this court has held that investigations, such as the type which occurred in this case, fall within the scope of those ordinary municipal police functions governed by the MPJA. *Com-*

9. We have only set forth the exceptions which are conceivably applicable to this case. As the remaining exceptions found at 42 Pa.C.S.A. § 8953(a)(2), (a)(5) and (a)(6) are inapposite, they will not be further discussed.

*monwealth v. Haynes,* 395 Pa.Super. 322, 332–333, 577 A.2d 564, 569 (1990), *allocatur denied,* 527 Pa. 598, 589 A.2d 689 (1991), *citing Commonwealth v. Saul,* 346 Pa.Super. 155, 161, 499 A.2d 358, 361 (1985). We must therefore ascertain whether one of the above exceptions under the MPJA permitted the extra-territorial investigation.

The record reveals that Officer Butelli arrested an individual in the Borough of Whitehall on drug-related charges. Suppression Hearing Transcript (SHT), Volume I, 5/31/90, at 24–25 and 27. This individual agreed to cooperate with the police and provided information as to appellant's drug-trafficking in the Greentree area. *Id.,* at 25 and 27. Upon receiving this information, Officer Butelli advised Chief Logue, the Greentree police chief, of appellant's alleged illicit activities. In response to Officer Butelli's information, Chief Logue then requested other municipal police departments to provide additional personnel to assist in the investigation of appellant's suspected drug sales. *See* Appellant's Supplemental Brief in Support of Omnibus Pretrial Motions, Exhibit A (letter, dated March 30, 1989, from Chief Logue to the police chiefs whose municipal police departments participate in SHDETF). As a result of Chief Logue's request for additional investigative police personnel, Officer Butelli arranged to purchase drugs from appellant.[10] Under these circumstances, Officer Butelli's extra-territorial investigation of appellant was permissible under § 8953(a)(3), as the investigation was only commenced in response to Chief Logue's express request for assistance.[11]

10. Officers from the other municipal police departments also assisted in the investigation and were responsible for conducting surveillance of appellant.

11. The trial court concluded that the investigation was proper under § 8953(a)(4) of the MPJA. As indicated above, this subsection provides for the exercise of extra-territorial jurisdiction where the officer obtains the prior consent of the chief law enforcement officer to enter the other jurisdiction *"for the purpose of conducting official duties which arise from official matters within the officer's primary jurisdiction."* 42 Pa.C.S.A. § 8953(a)(4), *supra* (emphasis added). Although Officer Butelli complied with this provision to the extent that he obtained the consent of the chief law enforcement officer, we question whether the investigation of appellant arose from official matters

*See Commonwealth v. Triplett,* 387 Pa.Super. 378, 383–384, 564 A.2d 227, 231 (1989) and *Commonwealth v. Peppers,* 357 Pa.Super. 270, 272–273, 515 A.2d 971, 972–973 (1986), *allocatur denied,* 515 Pa. 593, 528 A.2d 602 (1987) (both of which uphold extra-territorial arrests of defendants where the arresting officers were requested to assist other officers in an adjacent jurisdiction).

■■■■ Having concluded that the investigation of appellant was proper, we must next analyze the circumstances surrounding appellant's arrest. The record indicates that appellant was arrested in the Borough of Greentree following his third sale of drugs to Officer Butelli. SHT, Volume I, 5/31/90, at 54 and 57–58. Appellant was arrested by a team comprised of police officers from the municipalities of Greentree, Mount Lebanon, Bethel Park and Scott Township. *Id.,* at 54 and 56. It is unclear from the record as to which of the officers actually conducted the arrest. Assuming that Greentree police officers effectuated appellant's arrest, then no violation of the MPJA occurred because these officers were employed by the Borough of Greentree and were performing their official duties within their primary jurisdiction. *See* 42 Pa.C.S.A. § 8951 (defining municipal police officer and primary jurisdiction) and § 8952 (discussing the powers of a municipal police officer acting within his primary jurisdiction). In the alternative, if it is presumed that appellant was arrested by police officers from another municipality, appellant's arrest must never-

within Officer Butelli's jurisdiction. Officer Butelli learned of appellant's activities through the arrest of another individual within his primary jurisdiction. However, the informant indicated that appellant was selling drugs within the Borough of Greentree, not the Borough of Whitehall. Because appellant's activities were not located within Officer Butelli's primary jurisdiction, the exception authorized by § 8953(a)(4) appears to be inapplicable. *Compare Commonwealth v. Sestina,* 376 Pa.Super. 441, 446–447, 546 A.2d 109, 112 (1988), *allocatur denied,* 520 Pa. 616, 554 A.2d 508 (1989) (applying § 8953(a)(4)). Despite the trial court's sole reliance upon subsection (a)(4) of the MPJA, we may nevertheless affirm the ruling of the trial court where there are other legitimate grounds supporting the trial court's decision. *See Commonwealth v. O'Shea,* 523 Pa. 384, 395, 567 A.2d 1023, 1028 (1989), *cert. denied,* —— U.S. ——, 111 S.Ct. 225, 112 L.Ed.2d 180 (1990).

theless be deemed proper because they assisted in the arrest at the specific request of the Greentree police. *See* 42 Pa.C.S.A. § 8953(a)(3), *Commonwealth v. Triplett* and *Commonwealth v. Peppers, supra.* We therefore conclude that appellant's arrest was lawful.[12]

A different analysis applies to the search of appellant's residence, which was located in Robinson Township.[13] SHT, Volume I, 5/31/91, at 57. The MPJA authorizes extra-territorial service and execution of search warrants provided that the police officer serving the warrant obtains the consent of the chief law enforcement officer, or a person authorized by him or her to give consent, of the law enforcement agency which provides primary police services to the municipality where the warrant is to be served. *See* 42 Pa.C.S.A. § 8953(a)(1), *supra.* In this case, Officer Butelli obtained a warrant to search appellant's residence. *Id.,* at 56–57. The warrant was given to a separate team of officers, who were again members of various municipal police departments.[14] At appellant's suppression hearing,

12. Appellant also suggests that his arrest was unlawful because the police failed to obtain a warrant. *See* Appellant's Brief, at 27. It is well settled that the police have the authority to execute a warrantless arrest for felonies committed in the presence of the officer making the arrest or upon probable cause. *See* Pa.R.Crim.P., Rule 101, 42 Pa. C.S.A. Appellant's delivery of cocaine to the police was classified as a felony. *See* 35 P.S. § 780–113(f)(1.1). Further, the police officers who effectuated appellant's arrest had maintained surveillance on appellant and had been apprised of appellant's drug transactions by Officer Butelli. Because the officers observed appellant's sale of drugs to Officer Butelli and had been informed by Officer Butelli of appellant's criminal conduct, these factors were sufficient to permit appellant's warrantless arrest. *See Commonwealth v. Fromal,* 392 Pa.Super. at 111–113, 572 A.2d at 717 (discussing probable cause necessary to establish a lawful warrantless arrest). Appellant's arrest therefore cannot be invalidated on this basis.

13. The Robinson Township Police Department was not a member of SHDETF and Chief Logue did not request the Robinson Township police to assist in the investigation.

14. The record does not specifically indicate the primary municipalities of all the officers who participated in the search, however, the inventory of items seized from appellant's residence reveals that members of the Mount Lebanon police department participated in the search.

appellant stipulated that the municipal police officers contacted the Robinson Township Police and obtained the consent of the acting watch commander, Sergeant Ambrose, to execute the search warrant. SHT, Volume I, 5/31/90, at 68–69. Sergeant Ambrose also participated in and assisted the other police officers in executing the warrant. Because the police officers obtained the consent of the Robinson Township police department before executing the warrant, the search of appellant's residence was lawful. *See* 42 Pa.C.S.A. § 8953(a)(1), *supra.*

 The next issue raised by appellant involves the trial court's denial of appellant's motion to discover the identity and whereabouts of the confidential informant who initially introduced Officer Butelli to appellant.[15] With regard to a claim of this type, this court has observed:

There is no fixed rule with respect to [the] disclosure of an informant. The problem is one that calls for [a] balancing [of] the public interest in protecting the flow of information against the individual's right to prepare his [or her] defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony and other relevant

15. We find appellant's insistence that the Commonwealth disclose the identity of the confidential informant to be puzzling. At the preliminary hearing before the district justice, Officer Butelli testified that following his first purchase of cocaine from appellant, appellant told the officer to contact an individual named "Dino" to arrange for future purchases of cocaine. Preliminary Hearing Transcript (PHT), 6/13/89, at 23. Officer Butelli further testified that the confidential informant and "Dino" were the same individual. *Id.,* at 30. It is therefore evident that the confidential informant's identity was disclosed, at least partially, to appellant. Appellant's insistence on further disclosure, when he had been apprised of the informant's identity, suggests to this court that he is "vainly engaging in trial tactics ... [and merely] shadowboxing with the prosecution in a baseless attempt to get a name that he already had but in reality [is] hoping to get a reversible error...." *Roviaro v. United States,* 353 U.S. 53, 70, 77 S.Ct. 623, 632, 1 L.Ed.2d 639, 650 (1957) (dissenting opinion by Justice Clark). Despite the fact that appellant apparently learned of the informant's identity, we nevertheless will review his claim.

factors. Before disclosure of an informant's identity will
be required, more is necessary than a mere assertion by
the defendant that such disclosure might be helpful in
establishing a particular defense. Although the defen-
dant plainly cannot be expected to show that such infor-
mation will actually be helpful to his defense, the record
should at least suggest a reasonable possibility that the
information might be helpful, so that it would be unfair to
withhold it. . . . [Also,] there must be some showing that
revelation is necessary. For example, the informant's
identity may be necessary to the defense where the
evidence against the defendant proceeds solely from the
testimony of police officers, and the only relatively neu-
tral eyewitness to the crime is the informant. Other
situations where the informant's identity would be helpful
are where the defendant alleges entrapment or where
there is an identification issue. Conversely, when an
informant has not been an eyewitness to and has no
firsthand knowledge of the criminal transaction at issue,
the need for disclosure is greatly reduced. It has also
been held that a defendant may not insist upon disclosure
of the identity of a confidential informant where such
disclosure would jeopardize the safety of the informant.
*Commonwealth v. Mickens*, 409 Pa.Super. 266, 274–276,
597 A.2d 1196, 1200–1201 (1991) (citations omitted). *See
also, Commonwealth v. Jackson*, 409 Pa.Super. 568, 580,
598 A.2d 568, 574 (1991) (discussing the same considera-
tions); Pa.R.Crim.P., Comment to Rule 305, 42 Pa.C.S.A.
(indicating that the scope of discovery must be consistent
with the protection of persons and effective law enforce-
ment); and Pa.R.Crim.P., Rule 305 F, 42 Pa.C.S.A. (provid-
ing that the trial court may deny discovery upon a sufficient
showing). We will evaluate the trial court's refusal to
order disclosure of the informant in accordance with these
principles.

At appellant's suppression hearing, Officer Butelli
testified that the confidential informant arranged for the
officer's first purchase of cocaine from appellant. SHT,
Volume I, 5/31/90, at 35. Officer Butelli met appellant

inside the Greenery and was introduced to appellant by the informant. *Id.*, at 35 and 38. *See also* Preliminary Hearing Transcript, 6/13/89, at 22 and 34–35. After meeting with appellant and talking with him for awhile, appellant asked Officer Butelli "if he was ready." PHT, *supra*, at 23 and 32. Officer Butelli and appellant then left the Greenery and entered appellant's vehicle, at which point appellant sold cocaine to the officer. SHT, *supra*, at 42; PHT, *supra*, at 23. The informant did not leave the bar with appellant and Officer Butelli, nor did the informant otherwise participate in the actual transaction. SHT, *supra*, at 42–43 and PHT, *supra*, at 31. The informant also arranged for Officer Butelli to purchase cocaine from appellant on May 1, 1989. SHT, *supra*, at 46–48. However, the informant was not present at any time during the second drug transaction. *Id.*, at 47. Officer Butelli directly contacted appellant regarding the third drug purchase on May 17, 1989; thus, the confidential informant was not involved in any manner in that particular sale. *Id.*, at 53–54.

In this case, neither appellant's identity nor the necessity of having a neutral eyewitness was at issue, because appellant stipulated to the fact that he sold cocaine to Officer Butelli on the above dates. N.T., 6/29/90, at 57–60. Further, the record reveals that the confidential informant was not an eyewitness to any of the drug transactions because he was not present when Officer Butelli and appellant exchanged the cocaine and payment therefor. Rather, the informant acted as a mere tool or liaison by arranging for the initial introduction of appellant and Officer Butelli and by making the general arrangements for Officer Butelli's first two purchases of cocaine. *See Commonwealth v. Delligatti*, 371 Pa.Super. 315, 326, 538 A.2d 34, 39 (1988), *allocatur denied*, 520 Pa. 595, 552 A.2d 250 (1988) (in which the confidential informant, like the informant here, introduced the undercover officer to the defendant).

■ Appellant does not dispute these facts, but suggests that the disclosure was necessary because the confidential informant allegedly entrapped appellant by supply-

ing him with the cocaine for re-sale to the officer and by encouraging and/or enticing him to consummate the sales. *See* Appellant's Brief, at 41–42. While the defense of entrapment might necessitate the disclosure of an informant's identity under other circumstances, appellant failed to set forth any evidence in support of this defense. Instead, appellant merely asserted that he needed to question the informant to ascertain whether the informant was in fact the same individual who allegedly entrapped him. *See* SHT, Volume I, 5/31/90, at 36–37 and 40. In view of appellant's discussion with the court, it is apparent that appellant possessed no concrete evidence, other than his own self-serving allegations, which would even remotely corroborate his "entrapment" defense. In the absence of more specific evidence, the trial court was not required to compel the disclosure of the informant's identity and thereby jeopardize the informant to permit appellant to conduct a fishing expedition.[16] *See Commonwealth v. Mickens* and *Commonwealth v. Jackson, supra.*

**16.** Moreover, appellant's assertion of entrapment is inconsistent with his own behavior in conducting the first sale outside of the informant's presence and in making repeated sales to Officer Butelli outside of the informant's presence. In addition, Officer Butelli's discussions with appellant reveal that appellant, rather than the informant, was responsible for handling the drug transactions. *See* Preliminary Hearing Transcript (PHT), 6/13/89, at 23, 25, 26–27, 31, 32, 34 and 36 (in which appellant, after meeting Officer Butelli and talking with him for over one-half hour, asked the officer "if he was ready." Further, appellant and Officer Butelli arranged the third drug sale, and the informant had no knowledge of any of the details of this transaction. Appellant also indicated to the officer that he preferred to deal in small, rather than large quantities, but that he could sell Officer Butelli an ounce since he had that much in his possession). The discussions and/or statements made to Officer Butelli, as well as appellant's own conduct, amply evidence appellant's willing participation in the transaction and do not support his assertions of entrapment, enticement or inducement by the informant. *Compare, Commonwealth v. Wright,* 396 Pa.Super. 276, 578 A.2d 513 (1990), *allocatur denied,* 526 Pa. 648, 585 A.2d 468 (1991) (in which we found sufficient evidence of entrapment where the informant pretended to be a friend of the defendant and admittedly used that friendship to induce the defendant to obtain marijuana for the informant). Unlike the circumstances in *Wright,* or the other decisions cited by appellant, there was no evidence that appellant and the informant maintained a

In conjunction with his arguments regarding disclosure of the identity of the confidential informant, appellant also argues that the trial court erred in refusing to order the Commonwealth to disclose any promises of leniency or favorable treatment made to the confidential informant.[17] Appellant is correct in his assertion that promises of leniency or favorable treatment must be revealed. *See, e.g., Commonwealth v. Hill*, 523 Pa. 270, 273, 566 A.2d 252, 253 (1989) and *Commonwealth v. Ocasio*, 394 Pa.Super. 100, 103, 574 A.2d 1165, 1167–1168 (1990) (in which the appellate courts have recognized that whenever a prosecution witness may be biased in favor of the prosecution because of outstanding criminal charges or because of any non-final criminal disposition against him or her within the same jurisdiction, that possible bias, in fairness, must be made known to the finder-of-fact). However, appellant overlooks the fact that issues of bias on the part of a witness only become relevant where the witness testifies on behalf of the Commonwealth against the accused. In such cases, the credibility of the witness and any possible bias or motive to testify falsely is directly at issue. *See id.* Consequently, disclosure would only have been required in this case if the confidential informant had testified on behalf of the Commonwealth. Because the informant was never called to testify in this case, his or her credibility was never at issue, and the Commonwealth was not required to disclose any promises of leniency or favorable treatment which were allegedly made to the informant.

The third and fourth issues presented for review both relate to the execution of the search warrant. Appellant first suggests that because the search warrant was based

friendship or some similar relationship which the informant manipulated to induce appellant to sell cocaine to the police.

17. With regard to appellant's assertion, the record indicates that Officer Butelli denied offering any promises of leniency or favorable treatment to the informant in exchange for his cooperation. SHT, Volume I, 5/31/90, at 48–49. However, Officer Butelli testified that he told the informant that the informant's identity would remain confidential unless it became necessary to disclose this information. *See id.*

on the evidence of appellant's drug transactions, which the police allegedly lacked authority to investigate, the evidence seized pursuant to the warrant must be suppressed. We previously concluded in our analysis of appellant's first issue that the investigation, arrest, and search of appellant and his residence were all lawful. Suppression of the evidence derived from the investigation is therefore unwarranted.[18]

Appellant also contends that the search warrant was defective because it failed to establish sufficient probable cause that the controlled substance would be located at appellant's residence. With regard to this question,

we note that the magistrate's determination of probable cause should be afforded great deference by [the] appellate courts. Probable cause exists when the facts and circumstances set forth in the affidavit are sufficient to warrant a man of reasonable caution in believing that the contraband to be seized will be in the specified place. The task of the issuing magistrate is to make a common sense decision based upon all the circumstances before him [or her] as to whether there is a "fair probability that contraband or evidence of a crime will be found in a particular place." The duty of a reviewing court is to ensure that the magistrate had a "substantial basis for concluding that probable cause existed."

*Commonwealth v. Fromal,* 392 Pa.Super. at 113–114, 572 A.2d at 718 (citations omitted).

**18.** Even were we to assume, *arguendo,* that the police had violated the MPJA, exclusion of evidence obtained from the investigation, arrest and search of appellant's residence is not necessarily required. The Supreme Court has indicated that the determination as to whether the evidence must be excluded must be made on a case-by-case basis, in which the courts are required to examine all of the circumstances of the case, including the intrusiveness of the police conduct, the extent of deviation from the letter and spirit of the MPJA and the prejudice to the accused. *Commonwealth v. O'Shea, supra,* 523 Pa. at 398–400, 567 A.2d at 1030 (1989). Application of these factors leads us to conclude that suppression of the evidence in this case would be a remedy all out of proportion to the violation and to the benefits gained to the end of obtaining justice. *See id.,* and the cases cited therein.

The affidavit on which the search warrant was based was completed by Officer Butelli. In the affidavit, Officer Butelli described his experience regarding narcotics investigations and the specific transactions involving appellant. In addition, Officer Butelli indicated that the telephone number which he was given by appellant to arrange for future drug purchases was listed in appellant's name at his residence in Robinson Township. The affidavit further related Officer Butelli's initiation of the third cocaine purchase. Specifically, Officer Butelli averred that:

on Wednesday may 17[,] ... 1989[,] the Affiant[,] [Officer Butelli,] contacted the suspect [appellant] by telephone at the suspect's residence and arranged for another purchase of ¼ oz[.] [of] cocaine for later this same evening. It was agreed that the Affiant would meet the suspect in the parking lot of [the] Parkway Center Mall, at approximately 9:15 P[.]M. Immediately following this telephone contact with the suspect, surveillance officers notified the affiant that the suspect was leaving his residence in the company of another man, in a red[-]colored AUDI. These same surveillance officers then followed the suspect directly to the pre-arranged transaction location. The surveillance officers ... likewise notified the affiant that the suspect and his companion did NOT stop at any other location prior to meeting the affiant at the Parkway Center Mall. Then on this date at approximately 9:15 P[.]M., the affiant purchased approximately ¼ ounce of suspected cocaine which was packaged in two small paper packets each of which were marked "⅛".... During a brief conversation following this purchase, and concerning a larger future purchase of more cocaine, the affiant was told by the suspect that he (suspect) could supply an ounce of the drug, since he was "holding" at least that much....

Search Warrant and Affidavit of Probable Cause, dated May 17, 1989.

After reviewing the averments in light of the test set forth above, we agree with the trial court that the affidavit

established sufficient probable cause to search appellant's residence. Officer Butelli was given a telephone number, listed as belonging to appellant at his Robinson Township address, which the officer used to contact appellant to arrange the drug purchase. After making arrangements to meet Officer Butelli, appellant was observed departing from his home in the company of another male, and in a vehicle owned and operated by that individual. Appellant did not make any stops from the time he departed from his residence until he reached the Parkway Center Mall, where he met Officer Butelli and sold him the two bags of cocaine. Based on these facts, it is reasonable to conclude that appellant kept or possessed the cocaine which he sold to the officer at his residence. Appellant also informed the officer that he possessed additional quantities of cocaine. Because the cocaine sold to Officer Butelli had been stored at appellant's residence, there was a fair probability that the additional cocaine was likewise in the same place. We therefore conclude that the magistrate had a substantial basis for finding that sufficient probable cause existed to search appellant's residence.

Appellant also contends that the evidence seized at his residence must be suppressed because the requirements of Pa.R.Crim.P., Rule 2003(c), 42 Pa.C.S.A. (relating to night-time search warrants) were not fulfilled. As noted by appellee, this issue must be deemed waived because appellant failed to raise it in his omnibus-pre-trial motions, supplemental omnibus pre-trial motions or post-trial motions. *See Commonwealth v. Gravely,* 486 Pa. 194, 198–199, 404 A.2d 1296, 1298 (1979). Further, appellant has not properly preserved this issue for review on appeal as it is not specifically identified as a separate issue in appellant's statement of questions. The appellate courts have found issues to be waived where they have not been properly set forth in an appellant's statement of questions. *See Commonwealth v. Jackson,* 494 Pa. 457, 459 n. 1, 431 A.2d 944, 945 n. 1 (1981), *citing Commonwealth v. Unger,* 494 Pa. 592, 595 n. 1, 432 A.2d 146, 147 n. 1 (1980) and *Dickler v.*

*Shearson Lehman Hutton, Inc.*, 408 Pa.Super. 286, 290 n. 1, 596 A.2d 860, 862, n. 1 (1991). Because appellant has failed to preserve this issue at all relevant stages of the proceedings, we find it to be waived.[19]

The remaining issues raised by appellant all relate to the imposition of sentence. In his fifth issue, appellant asserts that the mandatory minimum sentencing provisions found in the Act of March 25, 1988, P.L. 262, No. 31, § 13, *codified* at 18 Pa.C.S.A. § 7508 (hereinafter the Act) are unconstitutional. In evaluating the constitutionality of a statute, we observe that:

> [l]awfully-enacted legislation is presumed to be constitutional. An Act of Assembly will not be declared unconstitutional unless it clearly, palpably and plainly violates the Constitution. The burden rests on the party seeking to upset the legislative action on constitutional grounds. All doubt is to be resolved in favor of sustaining the legislation.

*Commonwealth v. Jones*, 374 Pa.Super. 431, 437, 543 A.2d 548, 551 (1988), *allocatur denied*, 522 Pa. 574, 559 A.2d 35 (1989). Mindful of this standard, we find appellant's claims to be without merit.

■■■■ Appellant first asserts that the Act is unconstitutional because it violates Article III, Section 3 of the Pennsylvania Constitution (which prohibits an act from containing more than one subject and which requires the subjects contained therein to be clearly expressed in the title of the act). In this case, a reading of the title reveals that the Act involves amendments to the Crimes Code. Consequently, the Act does not impermissibly contain more than one subject. Similarly, the title of the Act indicates that the

---

**19.** Even were we to address the merits of this issue, appellant would not be entitled to relief. The affidavit submitted by Officer Butelli set forth sufficient reason to necessitate the nighttime search. *See* Search Warrant and Affidavit of Probable Cause, *supra* (averring that appellant was arrested in a public location while accompanied by another male companion, and may have been observed by other accomplices or acquaintances who could either participate in the destruction of evidence at appellant's residence or notify others to do so).

amendments, *inter alia,* relate to drug-trafficking, the revision of penalties, editorial changes and repeals of other provisions. This language is sufficient to put a reasonable person on notice as to the contents of the Act. *See In re: Condemnation by the Commonwealth of Pennsylvania, Department of Transportation,* 511 Pa. 620, 625–627, 515 A.2d 899, 901–902 (1986) (discussing the relevant considerations and elements which must be established by a party challenging the constitutionality of a legislative enactment where a violation of Article III, Section 3 has been alleged).

Appellant also believes the Act to be unconstitutional because it is impermissibly included in the Crimes Code rather than in the sentencing provisions of the Judicial Code or in the provisions of the Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. §§ 780–101—780–144. Appellant cites no authority to support this proposition nor does he otherwise elaborate upon the manner in which the location of the mandatory drug-trafficking sentencing provisions has negatively impacted upon his constitutional rights. As observed by our Supreme Court, mandatory sentencing provisions do not implicate a defendant's fundamental liberty interest, as the defendant's fundamental right, *i.e.,* freedom from confinement, has already been forfeited. *See Commonwealth v. Bell,* 512 Pa. 334, 346, 516 A.2d 1172, 1178–1179 (1986). Moreover, a defendant has no right to avoid punishment nor a right to a particular punishment within the relevant statutory range. *Id.* However, a defendant does have the right to receive, prior to sentencing, reasonable notice of the Commonwealth's intent to proceed under the mandatory provisions. *See* 18 Pa.C.S.A. § 7508(b). Appellant was given such notice here and was specifically informed of the location of the mandatory drug-trafficking penalties within the Pennsylvania statutory laws. *See* N.T., 6/29/90, at 70 and 71–72. In view of the fact that appellant was apprised of the applicable sentencing provisions as well as the Commonwealth's intent to proceed thereunder, and the fact that appellant was represented by zealous and competent counsel throughout all of

these proceedings, it is apparent that the location of the mandatory sentencing provisions within a particular statutory title did not violate any of appellant's constitutional rights. We therefore find appellant's argument to be wholly specious.

Appellant's final arguments regarding the constitutionality of the mandatory minimum sentencing provisions consist of appellant's allegations that his due process and equal protection rights have been violated.[20] Appellant does not distinguish between his due process and equal protection claims, but merely argues that these rights were violated because the statute does not bear a rational relationship to the ends sought to be achieved by the legislature. Although appellant does not specifically discuss his due process rights, we previously recognized that he received notice of the Commonwealth's intent to invoke the mandatory minimum sentencing provisions. Because appellant received notice and does not identify any other due process rights which were allegedly violated by the statute, we find this claim to be without merit. *See Commonwealth v. Sargent,* 349 Pa.Super. 289, 294–297, 503 A.2d 3, 6–7 (1986) (holding that mandatory minimum sentencing provisions do not violate a defendant's due process rights where the defendant receives notice of the Commonwealth's intent).

With regard to his equal protection argument, appellant has not established that convicted drug dealers are a member of a suspect or sensitive class nor has he established that the classification involves the exercise of a fundamental or important right. *See Commonwealth v. Jones,* 374 Pa.Super. at 437–438, 543 A.2d at 551 (discussing the classes to which the various levels of minimum and

**20.** Appellant also suggests that the mandatory minimum sentencing provisions violate the supremacy clause of both the federal and state constitutions. *See* Appellant's Brief, at 60. Appellant does not develop this argument in his brief, aside from this single conclusory statement. Because appellant has not referred us to any authority in support of this premise nor further explains the manner in which the Supremacy clause has purportedly been violated, we are unable to evaluate the merits of his claim.

266

heightened scrutiny apply). *See also Commonwealth v. Bell, supra* (holding that application of a mandatory minimum sentencing provision does not implicate a fundamental right). Consequently, only a minimum level of scrutiny need be applied to determine whether the statute bears a rational relationship to a legitimate legislative objective. *Commonwealth v. Jones, supra.*

In enacting the mandatory sentencing provisions, the purpose of the statute was to alleviate the ravages of drug trafficking and drug abuse in our society by subjecting convicted drug dealers to greater periods of confinement. *See Commonwealth v. Biddle*, 411 Pa.Super. 210, 217 n. 7, 601 A.2d 313, 317 n. 7 (1991), (opinion by Ford Elliott, J.), *citing* Senate Legislative Journal, No. 13, 172nd General Assembly, Volume I, at 1780, 1784 and 1786 (February 23, 1988). *See also* House Legislative Journal, No. 16, 172nd General Assembly, Volume I, at 357, 363, 373 and 374 (March 16, 1988) (for similar comments). Further, the legislature imposed more severe penalties on those individuals who were found to possess and/or deliver greater quantities of drugs. We agree with appellee that the legislature's scheme of imposing harsher penalties and longer periods of confinement on convicted drug dealers is rationally related to the laudable goal of attempting to put an end to the pernicious effects which drugs and the illicit drug trade have inflicted upon our society.

 Appellant also believes that the mandatory minimum sentencing provisions violate his equal protection rights because they are inconsistent with similar federal laws. We likewise find this argument to be without merit. In equating the state penalties with those imposed by the federal government, appellant attempts to compare apples with oranges. The problem with appellant's erroneous analysis is that the two systems simply are not identical. Individuals convicted of federal drug-related crimes are not similarly situated to those who are convicted of state drug offenses. Appellant has not referred us to any authority or precedent, nor are we aware of any, which would preclude

the state legislatures from enacting state drug-related crimes and prescribing the punishments therefor merely because Congress has also enacted similar federal drug-related crimes. Appellant has similarly failed to refer us to any authority or precedent, and we are not aware of such, which would forbid the states' use of a different penalty scheme than that devised by Congress. Because individuals in the federal and state criminal justice systems are not similarly situated, we discern no violation of appellant's equal protection rights on this basis.

In his penultimate issue, appellant suggests that the sentences imposed by the lower court were unlawful because his sentence for possession with the intent to deliver 74.74 grams of cocaine should have merged with his sentence for the third delivery of cocaine which occurred on May 17, 1989. The essence of appellant's argument is that the cocaine sold to the undercover police officer on these prior occasions was derived from the same source, *i.e.*, the larger amount found at appellant's residence. We disagree with appellant's reasoning. The source of the drugs is not relevant in determining whether two separate crimes merge for sentencing purposes. Rather, the focus is on whether one of the crimes is a lesser included offense of the other. *See Commonwealth v. Mobley*, 399 Pa.Super. 108, 117, 581 A.2d 949, 953 (1990). This court has previously held that the crime of simple possession merges with the offense of possession with the intent to deliver. *See Commonwealth v. Logan*, 404 Pa.Super. 100, 103 n. 4, 590 A.2d 300, 301 n. 4 (1991), *allocatur denied*, 528 Pa. 622, 597 A.2d 1151 (1991) and *Commonwealth v. Swavely*, 382 Pa.Super. 59, 66 n. 3, 554 A.2d 946, 949 n. 3 (1989), *allocatur denied*, 524 Pa. 619, 571 A.2d 382 (1989). The crime of possession with the intent to deliver similarly has been recognized to be a lesser included offense of the crime of delivery of a controlled substance. *Commonwealth v. Edwards*, 302 Pa.Super. 522, 524, 449 A.2d 38, 39 (1982). However, the Supreme Court has also indicated that where additional facts support another crime, the crimes do not merge for sentencing

purposes. *See Commonwealth v. Weakland*, 521 Pa. 353, 364, 555 A.2d 1228, 1233 (1989) (holding that where a defendant commits multiple acts of violence, convictions for these acts do not merge for sentencing purposes beyond that which is necessary to supply the element of violence or threat for the additional crime).

As applied to this case, it is evident that appellant's convictions for his May 17, 1989 possession, possession with the intent to deliver and delivery of 7.1 grams of cocaine to the undercover police officer would merge and, in fact, were merged for sentencing purposes. This result was correct because the possession, possession with the intent to deliver and the delivery of the identical substance arose out of the same transaction and all were premised on the same set of facts. However, it does not follow that appellant's additional possession of the 74.74 grams of cocaine at his residence merges with his prior possession/delivery convictions. Pursuant to *Commonwealth v. Weakland, supra,* it is evident that appellant's conviction for the possession of the 74.74 grams of cocaine arose out of a completely different set of additional facts which were unrelated to and which were unnecessary to sustain appellant's delivery conviction. We therefore affirm the sentencing court's refusal to merge these convictions for sentencing.

Appellant's final claim relates to the discretionary aspects of his sentence. Before we may proceed to review the merits of this issue, we must ascertain whether appellant has demonstrated the existence of a substantial question that the sentence is inappropriate. *See* 42 Pa.C.S.A. § 9781(b). In fulfillment of this requirement, appellant must include in his brief a concise statement of the reasons relied upon for allowance of the appeal of these matters. *See* 42 Pa.C.S.A. § 9781(b); Pa.R.A.P., Rule 2119(f), 42 Pa.C.S.A.; and *Commonwealth v. Tuladziecki,* 513 Pa. 508, 522 A.2d 17 (1987). Appellant has complied with these requirements.

In determining whether appellant has presented a substantial question for review, we recognize that:

[t]he determination of whether a particular issue constitutes a substantial question must be evaluated on a case by case basis. However, we will be inclined to allow an appeal where an appellant advances a colorable argument that the [sentencing] judge's actions were: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

*Commonwealth v. Clever*, 395 Pa.Super. 192, 195, 576 A.2d 1108, 1110 (1990), *quoting Commonwealth v. Losch*, 369 Pa.Super. 192, 201 n. 7, 535 A.2d 115, 119 n. 7 (1987). In his concise statement of reasons for allowance of the appeal, appellant suggests that the sentencing court erred because the sentence was manifestly excessive and because undue weight was assigned to the gravity of the offense despite the existence of certain mitigating factors. Appellant also believes that the sentence was unreasonably disproportionate to other sentences imposed. Claims of this nature have been deemed sufficient to present a substantial question for review. *See Commonwealth v. Rizzi*, 402 Pa.Super. 335, 341, 586 A.2d 1380, 1383 (1991) (*en banc*). We will accordingly proceed to evaluate the merits of appellant's sentencing claims.

In reviewing appellant's sentence, we are cognizant of the fact that:

[s]entencing is a matter vested in the sound discretion of the trial court and the lower court's judgment of sentence will not be disturbed by an appellate court absent an abuse of [that] discretion. To constitute an abuse of discretion, a sentence must either exceed the statutory limits or be patently excessive. [Further,] [w]hen reviewing sentencing matters, we must accord the sentencing court great weight as it is in the best position to view the defendant's character, displays of remorse, defiance or

indifference, and the overall effect and nature of the crime.

*Commonwealth v. Clever, supra* (citations omitted).

In this case, the sentencing court determined that the mandatory minimum sentencing provisions applied.[21] The subsection of the statute applicable to appellant's delivery convictions imposed a minimum sentence of one (1) year's imprisonment. 18 Pa.C.S.A. § 7508(a)(3)(i). However, a minimum sentence of three (3) years' imprisonment was required for appellant's conviction for possession with the intent to deliver 74.74 grams of cocaine. 18 Pa.C.S.A. § 7508(a)(3)(ii).

Appellant first contends that the sentencing court abused its discretion by failing to consider relevant mitigating factors. Where a pre-sentence investigation report exists, it is presumed that the sentencing judge was aware of and appropriately weighed all relevant information regarding a defendant's character along with any mitigating factors. *Commonwealth v. Clever, supra, citing Commonwealth v. Devers,* 519 Pa. 88, 546 A.2d 12 (1988). Contrary to appellant's interpretation, a review of the sentencing hearing transcript reveals that the trial court was extremely impressed with appellant's personal background as set forth in his favorable pre-sentence report and took note of specific mitigating factors such as appellant's lack of any criminal history, educational status, and the fact that appellant had already paid a substantial penalty for his crimes by suffering the loss of his job. *See* Sentencing Hearing Transcript (Sent. H.T.), 8/30/90, at 22–23 and 32–33. Consideration of these mitigating circumstances is further evidenced by the sentencing court's imposition of con-

---

**21.** The mandatory minimum sentencing provisions were amended by the Act of December 19, 1990 P.L. 1451, No. 219, § 4 and were immediately effective. Because appellant was sentenced prior to the effective date of the amendments, we will evaluate his sentence in accordance with the original statute. Although the amendments substantially rewrote subsection (a), the penalty provisions applicable to appellant's convictions were not altered. The amendments therefore have no affect upon our disposition of appellant's claims.

current sentences for each of appellant's three delivery convictions, even though consecutive sentences were requested by the Commonwealth and could lawfully have been imposed. Application of the mitigating factors is also demonstrated by the sentencing court's decision not to impose additional penalties on appellant's remaining convictions for possession of additional quantities of cocaine, marijuana and drug paraphernalia. Because it is apparent from the discussion set forth in the sentencing transcript that the sentencing court did not focus solely on the seriousness of the offenses but expressly applied the relevant mitigating factors in fashioning appellant's sentence, we find no merit to appellant's claim that the mitigating factors were ignored or assigned insufficient weight by the lower court.

■■■ Appellant also avers that his sentence was manifestly excessive. While the sentencing court was empowered to impose a greater minimum sentence than that specified in the mandatory minimum sentencing provisions, no similar authority existed which would permit the court to impose a lesser minimum sentence. *See* 18 Pa.C.S.A. § 7508(c). *See also Commonwealth v. Polanco*, 395 Pa.Super. 197, 201, 576 A.2d 1111, 1113 (1990), *allocatur granted*, 526 Pa. 654, 586 A.2d 922 (1991) (recognizing that the mandatory minimum sentencing provisions compel the trial court to impose a minimum period of confinement but permit the courts, within their discretion, to impose more than the mandatory minimum sentence). In determining appellant's minimum sentence, the lower court balanced the mitigating factors against certain aggravating circumstances which were also present. *See* 204 Pa.Code § 303.-3(b)(2), (b)(4) and (b)(6), *reprinted* at 42 Pa.C.S.A. § 9721 (identifying continuing violations of the Controlled Substance, Drug, Device and Cosmetic Act, derivation of substantial income or resources from drug activities and any other factors, respectively, as aggravating circumstances which may be considered by the court). As indicated by the record, appellant made three separate deliveries of cocaine

to the police and evidenced an intent or willingness to engage in a fourth transaction in which he offered to sell an ounce of cocaine to Officer Butelli. Appellant further possessed a large quantity of cocaine at his residence which was estimated to have a value of between $4,000.00 and $9,000.00, thus indicating that appellant derived substantial revenues from his illicit activities. In view of these factors, and because neither of appellant's sentences exceeded the statutory limit, see 35 P.S. § 780–113(f)(1.1) (classifying possession with the intent to deliver or delivery of cocaine as felony punishable by a maximum term of ten years' imprisonment), we do not find appellant's sentence to be manifestly or patently excessive.[22]

As a final matter, we disagree with appellant's assertion that his sentence is unreasonably disproportionate to other sentences imposed in Allegheny County, the Commonwealth of Pennsylvania and the federal criminal justice system. Although appellant refers us to the numerous tables appended to his memorandum in support of his motion for reconsideration of sentence, we do not find these statistics to be especially persuasive. As indicated above, federal sentencing considerations are not dispositive since the states are free to enact their own punishments for state drug law violations. Moreover, because of the differences between the state and federal systems, it is not possible to accurately compare the punishments imposed under each and conclude that the state punishment is unreasonably disproportionate to that imposed under the federal system. With regard to appellant's other tables, these reveal nothing more than percentages of individuals who have received jail, prison or other sentences for drug-related and non-drug related offenses. Appellant does not elaborate upon the

22. We also observe that with regard to appellant's delivery convictions, the sentence imposed by the court fell well within the mitigated range of minimum sentences suggested by the Sentencing Guidelines. See 204 Pa.Code § 303.9, reprinted at 42 Pa.C.S.A. § 9721 (recommending nine (9) to fifteen (15) months of incarceration for a violation of subsection (a)(30) of the Controlled Substance, Drug, Device and Cosmetic Act where the quantity of the substance is more than two (2) but less than one hundred (100) grams).

manner in which the information contained in these tables is relevant, nor does he attempt to explain why his sentence is significantly disproportionate to the sentences received by other drug dealers who have been convicted of drug-related crimes involving facts similar to those present in appellant's case. Under these circumstances, we find no reason for disturbing the sentence imposed by the lower court.

In sum, we have thoroughly examined the arguments raised by appellant in light of the certified record and conclude that none of his claims necessitates the grant of relief. We therefore affirm the judgment of sentence.

Judgment of sentence affirmed.