## Commonwealth v. Lawson

C.P. of Cumberland County, no. 94-0013.

*Jonathan R. Birbeck,* for the Commonwealth.
*Ellen K. Barry,* for defendant.

OLER, *J.,* March 2, 1995—In this case, the Commonwealth has appealed to the Superior Court from a judgment of sentence imposed by the writer of this opinion.[1] The basis for the appeal is that a more severe mandatory sentence should have been imposed than the mandatory sentence which was imposed.[2] This opinion in support of

---

1. See notice of appeal, filed January 23, 1995.
2. See concise statement of matters complained of on appeal, filed February 6, 1995.

the judgment of sentence is written pursuant to Pa.R.A.P. 1925(a).

## STATEMENT OF FACTS

Defendant is a teenager with no prior record,[3] who has received a sentence of one to three years in a state correctional institution on a drug charge.[4] He is the African-American son of a Philadelphia policewoman and businessman.[5] He worked while attending high school in Philadelphia and, at the time of sentence, was a second-year student at Thaddeus Stevens School of Technology in Lancaster, Pennsylvania, about to graduate.[6] His mother was described as "shattered" by his arrest,[7] and she was overcome at sentencing.[8]

Defendant's bail was revoked by the court at the conclusion of the sentencing proceeding, and he is presently in prison, serving the sentence imposed.[9] The judgment of sentence from which the Commonwealth has appealed is as follows:

---

3. Presentence investigation report, court's exhibit 1, sentencing proceeding, January 3, 1995.

4. Order of court, January 3, 1995.

5. Presentence investigation report, court's exhibit 1, sentencing proceeding, January 3, 1995; letter, December 22, 1994, defendant's exhibit 1, sentencing proceeding, January 3, 1995.

6. Presentence investigation report, court's exhibit 1, sentencing proceeding, January 3, 1995.

7. Letter, December 22, 1994, defendant's exhibit 1, sentencing proceeding, January 3, 1995.

8. N.T. 4-5, sentencing proceeding, January 3, 1995.

9. N.T. 10, sentencing proceeding, January 3, 1995. Obviously, the defendant's graduation from post-secondary school did not occur.

"ORDER OF COURT

"And now, January 3, 1995, the defendant, Gerald J. Lawson, now appearing in court for sentencing with Ellen K. Barry, Esquire, First Assistant Public Defender, and having previously been found guilty following a jury trial of possession with intent to deliver a schedule II controlled substance, namely, cocaine, and the court being in receipt of a presentence investigation report, and the court finding by a preponderance of the evidence that the amount of cocaine possessed by defendant with intent to deliver it was at least two grams and less than 10 grams, the sentence of the court in accordance with the mandatory sentencing provision of 18 Pa.C.S. §7508(a)(3)(1), is that the defendant pay the costs of prosecution, and a fine of $5,000, and that he undergo imprisonment in a state correctional institution for a period of not less than one year nor more than three years, with credit to be given for 10 days previously served.

"To the extent that this sentence is in the mitigated range under the guidelines, it is because of the defendant's young age, his lack of any prior criminal record, his history of attempts at self-improvement through high school employment and college, the availability of family support, and the court's belief that years of prison in addition to those imposed herein would not have the desired effect of enhancing the likelihood of rehabilitation.

"The state sentence imposed herein shall be served at a state correctional institution, but the defendant shall remain at the Cumberland County Prison pending further order of court. Bail is revoked in this matter so that the defendant may commence service of the sentence."[10]

10. Order of court, January 3, 1995.

The basis of the Commonwealth's appeal, as expressed in its statement of reasons complained of on appeal, is that "[t]he defendant's sentence was illegal in the sense that it does not conform with the mandatory sentencing provisions of 18 Pa.C.S. §7508(a)(3)(iii)[11] and the Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. 780-113(a)(30)."[12] More specifically, it is the Commonwealth's position that the court erred in finding the weight of cocaine possessed with intent to deliver by defendant to have been between two and 10 grams, as opposed to between 10 and 100 grams, resulting in a mandatory minimum sentence of one year, as opposed to a mandatory minimum sentence of three years.[13]

At the sentencing proceeding, neither the Commonwealth nor the defendant presented evidence on the mandatory sentence issue in addition to that contained in the trial record.[14] Briefly stated, the evidence at trial pertinent

---

11. It is believed that the Commonwealth meant to cite section 7508(a)(3)(ii) of the Crimes Code (mandatory sentence of three years in case of possession of cocaine with intent to deliver, where quantity involved is at least 10 grams but less than 100 grams). Section 7508(a)(3)(iii) (mandatory sentence of four years where quantity involved is 100 grams or more) would not arguably be applicable to the present case.

12. Concise statement of matters complained of on appeal, paragraph 1.

13. Concise statement of matters complained of on appeal, paragraph 1; N.T. 6, sentencing proceeding, January 3, 1995.

The Commonwealth has not appealed the discretionary aspects of the sentence.

14. By agreement of counsel, the trial record was incorporated into the sentencing proceeding. N.T. 3-4, sentencing proceeding, January 3, 1995. The Commonwealth introduced a laboratory report respecting drugs seized from defendant (Commonwealth's exhibit 1), which had been an exhibit at trial. (Commonwealth's exhibit 3.)

to the issue of the proven weight of cocaine possessed by defendant with intent to deliver included the following:

On Friday, January 14, 1994, defendant, who had just turned 18, had in his possession a plastic bag containing 21 small ziplock bags.[15] From this bag, he took two of the smaller bags, each containing two nuggets, and sent a man whom he had just met into a Carlisle hotel in the hope that the man could sell them for $80 to the man's friends.[16] The man went out the back door of the hotel, went home, smoked the nuggets, called the police, and turned defendant in.[17] Defense counsel's characterization of defendant as "naive" would appear to be a slight understatement.[18]

Police arrested defendant as he sat in the man's car in front of the hotel.[19] On his person, defendant had the plastic bag and also two film canisters.[20] In the plastic bag were 19 nuggets, individually packaged in small ziplock bags; the canisters contained loose, unpackaged nuggets, one canister having 36 nuggets and the other 102.[21] Defendant also had $216 in currency.[22]

---

N.T. 6-7, sentencing proceeding, January 3, 1995. Defendant introduced a letter from counsel in support of defendant's position on the mandatory sentencing issue, inter alia. (Defendant's exhibit 1.) N.T. 3, sentencing proceeding, January 3, 1995. The presentence investigation report was also made part of the record. (Court's exhibit 1.) N.T. 5, sentencing proceeding, January 3, 1995.

    15. N.T. 32-34, 63, 85.
    16. N.T. 84-85, 91, 103.
    17. N.T. 51-56, 85-87.
    18. N.T. 154.
    19. N.T. 30-34.
    20. N.T. 33-34.
    21. N.T. 33-34.
    22. N.T. 39.

The suspected drugs were sent to the state police laboratory in Harrisburg.[23] The weight of the unpackaged nuggets in one canister totaled 12.5 grams; the weight of the unpackaged nuggets in the other canister totaled 3.9 grams; the weight of the individually packaged nuggets in the bag was estimated at 2.2 grams.[24] The latter figure was only an approximation, because nine of the 19 nuggets were not actually weighed;[25] the 10 which were weighed totaled 1.26 grams.[26]

The laboratory subjected to analysis, for the presence of cocaine, far fewer nuggets than the number which would have approached 10 grams in weight.[27] The testimony was unsatisfactory for purposes of determining with any precision how many of the items had been tested. In this regard, the following excerpts of the testimony of the laboratory technician are representative:

"Q. And how many of these little things [in one of the canisters] did you test?

"A. That, I don't know. . . .

"Q. Do you have that in your notes there?

"A. As to how many?

"Q. Little nuggets you tested.

"A. No, I do not.

"Q. Did you test less than half of them?

"A. Judging from the apparent number there, I would say that that is a—that would be a true statement.

23. N.T. 35, 61.
24. N.T. 63-64; Commonwealth's exhibits 1, 3.
25. N.T. 68-69.
26. N.T. 69.
27. N.T. 63-71.

"Q. So, you tested 18 or less?

"A. Well, less than 18. The exact number, I wouldn't—

"Q. Five?

"A. *Again, I have no—would have no knowledge....*[28]

"Q. How much of [the contents of the second canister] did you test?

"A. Again, *I would not know how many* of the individual pieces I had sampled for that."[29]

When asked whether he might have tested three or four of the 102 nuggets in the second canister, he concluded, *"I would have no way of knowing."*[30]

With respect to the 19 individually packaged nuggets in the bag in defendant's possession, it is possible to infer that 10 nuggets, having a total weight of 1.26 grams, were analyzed.[31] The items which the laboratory did subject to analysis tested positive for the presence of cocaine.[32]

In closing argument, on the issue of intent, the Commonwealth emphasized the packaged-for-sale character of the ziplock items in the bag in defendant's possession:

"Well, gee, I'm thinking here, if he possessed it and it's crack cocaine and there's a lot of it and it's packaged to sell in little tiny separate glassine bags, little tiny separate glassine bags—where do you buy these little plastic bags?

---

28. N.T. 69-70. (emphasis added)

29. N.T. 71. (emphasis added)

30. N.T. 71. (emphasis added) Defendant's guilt or innocence did not, of course, depend upon the jury's determination of the weight of the drug, and it was not the Commonwealth's burden at trial to establish a basis for a determination as to weight.

31. N.T. 69.

32. Commonwealth's exhibit 3.

Does that look like it's ready to sell to you all? Twenty bucks a throw will get you high on some crack."[33]

The jury returned verdicts of guilty of possession of cocaine with intent to deliver[34] and guilty of simple possession of cocaine.[35] The jury was not, of course, requested to determine the overall weight of the cocaine, nor was it asked for any apportionment of the weights between the two verdicts.

## STATEMENT OF LAW

Section 7508(a)(3) of the Crimes Code provides as follows:

"A person who is convicted of violating section [13(a)(30)] of The Controlled Substance, Drug, Device and Cosmetic Act where the controlled substance is coca leaves or is any salt, compound, derivative or preparation of coca leaves or is any salt, compound, derivative or preparation which is chemically equivalent or identical with any of these substances or is any mixture containing any of these substances except decocainized coca leaves or extracts of coca leaves which (extracts) do not contain cocaine or ecgonine shall, upon conviction, be sentenced to a mandatory minimum term of imprisonment and a fine as set forth in this subsection:

"(i) when the aggregate weight of the compound or mixture containing the substance involved is at least two

---

33. N.T. 167.

34. N.T. 190-91. See Act of April 14, 1972, P.L. 233, §13(a)(30), *as amended,* 35 P.S. §780-113(a)(30).

35. N.T. 191. See Act of April 14, 1972, P.L. 233, §13(a)(16), *as amended,* 35 P.S. §780-113(a)(16). This verdict was considered to have merged for sentencing purposes with the more serious charge.

grams and less than 10 grams; one year in prison and a fine of $5,000 or such larger amount as is sufficient to exhaust the assets utilized in and the proceeds from the illegal activity; however, if at the time of sentencing the defendant has been convicted of another drug trafficking offense: three years in prison and $10,000 or such larger amount as is sufficient to exhaust the assets utilized in and the proceeds from the illegal activity;

"(ii) when the aggregate weight of the compound or mixture containing the substance involved is at least 10 grams and less than 100 grams; three years in prison and a fine of $15,000 or such larger amount as is sufficient to exhaust the assets utilized in and the proceeds from the illegal activity; however, if at the time of sentencing the defendant has been convicted of another drug trafficking offense: five years in prison and $30,000 or such larger amount as is sufficient to exhaust the assets utilized in and the proceeds from the illegal activity. . . ."[36]

Several principles with respect to application of these mandatory sentencing provisions are of importance herein. First, a court is not free to disregard the provisions. "There shall be no authority in any court to impose on an offender to which this section is applicable a lesser sentence than provided for herein or to place the offender on probation, parole, work release or prerelease or to suspend sentence." [37]

---

36. Act of March 25, 1988, P.L. 262, §13, *as amended,* 18 Pa. C.S. §7508(a)(3)(i), (ii) (1994 Supp.).

37. Act of March 25, 1988, P.L. 262, §13, *as amended,* 18 Pa. C.S. §7508(c) (1994 Supp.); see *Commonwealth v. Carroll,* 438 Pa. Super. 55, 651 A.2d 171 (1994).

Second, a determination as to the applicability of a given mandatory sentencing provision is to be made by the court at the time of sentence.[38] Third, the applicability of a given mandatory sentencing provision must be proven by a preponderance of the evidence.[39] Fourth, a court "may not reassess the facts upon which it previously relied to establish guilt" in determining the applicability of a mandatory sentence provision.[40]

Fifth, the weight of a mixture containing cocaine, as opposed to the weight of pure cocaine, is the proper weight to be considered in applying a mandatory sentencing provision based on weight.[41] Finally, although a substance may be tested on the basis of a portion thereof,[42] this court has been wary of imposing a severe mandatory sentence based upon a substance's weight, where discrete items of alleged drugs are involved, the weight of the items analyzed has been substantially below the prescribed weight under the mandatory sentencing provision, and little burden would have been involved in the Commonwealth's acquisition of an analysis of the prescribed amount for purposes of sentence. *Commonwealth v. Coleman,* no. 94-0340 Criminal Term (February 15, 1995) (Cumberland Co.) (Bayley, J.).

---

38. Act of March 25, 1988, P.L. 262, §13, *as amended,* 18 Pa. C.S. §7508(b) (1994 Supp.).

39. Act of March 25, 1988, P.L. 262, §13, *as amended,* 18 Pa. C.S. §7508(b) (1994 Supp.).

40. *Commonwealth v. Carroll, supra;* see *Commonwealth v. Mayes,* 436 Pa. Super. 1, 647 A.2d 212 (1994).

41. *Commonwealth v. Brown,* 408 Pa. Super. 246, 596 A.2d 840 (1991), *appeal denied,* 532 Pa. 660, 616 A.2d 982 (1992).

42. *Commonwealth v. Perez,* 397 Pa. Super. 574, 580 A.2d 781 (1990).

In summary, "before imposing a mandatory minimum sentence, a sentencing court must determine whether the offense for which the defendant was convicted falls within the parameters of the sentencing scheme. This requires a separate determination by the sentencing court." *Commonwealth v. Carroll,* 438 Pa. Super. 55, 58, 651 A.2d 171, 173 (1994). Where the evidence at trial is not conclusive on the issue of the amount of a drug possessed with intent to deliver, the court's obligation to carefully review the evidence is "not merely proper; it [is] mandated by statute." *Id.* at 60, 651 A.2d at 174. On appeal, the decision of the sentencing court will be reviewed on the basis of whether a determinative finding is supported by the evidence. *Id.* at 59, 651 A.2d at 173.

## APPLICATION OF LAW TO FACTS

In the present case, a number of factors led to the court's finding that the amount of cocaine shown by a preponderance of the evidence to have been possessed with intent to deliver was between two and 10 grams. First, of the substance possessed by defendant, a total of only about two grams was packaged for sale. (In assessing a weight of at least two grams to these items, the court has given the Commonwealth the benefit of the doubt by accepting the estimate of cocaine in this amount offered by its expert, notwithstanding that only 1.26 grams were actually weighed and notwithstanding that only 10 of 19 packets were tested.)

Second, less than half a gram was actually offered for sale by defendant.

Third, the items of alleged contraband were in discrete forms, as opposed to a mixture, the weight of the items

tested was a small fraction of the 10-gram requisite for application of the mandatory sentencing provision advocated by the Commonwealth, and little burden would have been involved in securing an analysis of an amount comporting with the statutory figure for purposes of sentencing.

Fourth, the testimony was wholly inadequate in terms of amounts sampled by the laboratory to provide a basis for the court to accept as reasonable a deduction that the actual weight of cocaine was 10 grams or more.

Finally, the court's finding that the Commonwealth succeeded in proving by a preponderance of the evidence that defendant possessed at least two grams of cocaine with intent to deliver, but not 10 or more, was not inconsistent with the jury's verdicts of guilty of possession with intent to deliver and guilty of simple possession.

For these reasons, it is believed that the court's factual determination as to the weight of cocaine shown to have been possessed by defendant with intent to deliver was supported by the evidence. It is further believed that the imposition of a one-to-three year state prison sentence upon this young defendant with no prior record more than adequately served the punitive, deterrent and rehabilitative interests of justice.