580 A.2d 781

**COMMONWEALTH of Pennsylvania**

v.

**Juan PEREZ, Appellant.**

Superior Court of Pennsylvania.

Submitted July 2, 1990.

Filed Sept. 12, 1990.

John W. Packel, Asst. Public Defender, Philadelphia, for appellant.

Donna G. Zucker, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before OLSZEWSKI, MONTEMURO and CERCONE, JJ.

CERCONE, Judge:

Following a trial before the learned court, sitting without a jury, appellant was convicted of Possession with Intent to Deliver a Controlled Substance,[1] in this instance, cocaine. As a result of this conviction, appellant was sentenced pursuant to 18 Pa. C.S.A. § 7508[2] to a term of imprisonment of not less than one (1) year nor more than two (2) years in the county prison and to pay a fine of five thousand dollars ($5,000). Appellant was also ordered to pay costs in the amount of twenty-five ($25.00). We now have appellant's timely filed appeal before us.

Appellant presents a single question on appeal, claiming that the trial court erred in sentencing him pursuant to 18 Pa. C.S.A. § 7508 as the Commonwealth failed to produce any evidence relating to an illegal "substance," and in sentencing him contrary to a proper interpretation of § 7508. Appellant argues that the mandatory minimum sentence under § 7508 can only apply in this case if the substance seized is pure cocaine of the proscribed weight. Appellant argues that the cocaine or its derivatives cannot be "mixed" with another product in determining the total weight of cocaine or its derivatives. His argument is based

1. 35 Pa.S. § 780–113(a)(30).
2. Entitled Drug Trafficking Sentencing and Penalties; P.L. 262, No. 31, § 13, Passed Mar. 25, 1988, effective Jul. 1, 1988. Appellant was sentenced under Section (a)(3)(i) of the statute.

on an alleged ambiguity present in the language of § 7508(a) which is as follows:

(3) A person who is convicted of violating section 13(a)(14) or (30) of The Controlled Substance, Drug, Device and Cosmetic Act *where the controlled substance is coca leaves or* is any salt, compound derivative or preparation of coca leaves or is any salt, compound, derivative or preparation which is chemically equivalent or identical with any of these substances or *is any mixture containing any of these substances* except decocainized coca leaves or extracts of coca leaves which (extracts) do not contain cocaine or ecgonine shall, upon conviction, be sentenced to a mandatory minimum term of imprisonment and a fine as set forth in this subsection:

(i) upon the first conviction when the amount of the substance involved is at least 2.0 grams and less than ten grams; one year in prison and a fine of $5,000 or such larger amount as is sufficient to exhaust the assets utilized in and the proceeds from the illegal activity....

18 Pa. C.S.A. § 7508(a)(3)(i).

■ Appellant argues that the word "substance" in subsection (a)(3)(i) refers to pure cocaine and does not have any reference to a "mixture" of cocaine or its derivatives with any other product. He argues further that a criminal statute must be strictly construed and any ambiguity must be interpreted in his favor. The claim is based on that alleged ambiguity in the language of (a)(3)(i) so that it must be construed strictly and that only pure cocaine, or its derivative, of the proscribed weight can be considered in the sentencing process of that subsection. It is our opinion that there is no ambiguity in the language of § 7508 and its subsections. But even if ambiguity existed, the Supreme Court of Pennsylvania has determined that strict construction of the crimes code provisions is to be applied in conjunction with the requirement of 18 Pa. C.S.A. § 105 that such provisions must be construed according to the "fair import" of their terms.[3] In *Commonwealth v. Lurie*, 524 Pa. 56,

**3.** Principles of construction

63, 569 A.2d 329, 332 (1990), the court held, "it is clear from the explicit language of Section 105 that the 'fair import' principle of construction specifically applies to the provisions of the Crimes Code (Title 18)." *See* Official Comment to 18 Pa. C.S.A. 105. *See also Commonwealth v. Rhodes,* 510 Pa. 537, 545–46, 510 A.2d 1217 (1986) (explicating the purpose and interpretation of § 105); *Commonwealth v. Frisbie,* 506 Pa. 461, 466, 485 A.2d 1098, 1100 (1984) (same); *Commonwealth v. Henley,* 504 Pa. 408, 415, 474 A.2d 1115, 118–19 (1984) (same). There is nothing in this case as we shall point out to rebut the "fair import" of the language in (a)(3) and (a)(3)(i) of § 7508 *supra,* which is to punish drug traffickers who, in this case, distribute cocaine or its derivative mixed with another product in order to avoid detection of their obvious crime.

As to ambiguity, in a study of the two subsections of § 7508 we find clear, transitional language which ties together the "substance" referred to in subsection (a)(3) of the section with "substance" referred to in subsection (a)(3)(i) of the section. The language in subsection (a)(3) of § 7508 holds that anyone convicted of trafficking in cocaine, its derivatives or any mixture containing cocaine or its derivatives with other products shall "be sentenced to a mandatory minimum term of imprisonment and a fine *as set forth in this subsection* . . . ." The very next subsection is (a)(3)(i), which is the only penalty subsection to § 7508, and can only refer to the imposition of sentence for anyone convicted of trafficking in the substance referred to in subsection (a)(3). To interpret § 7508 in accordance with appellant's view would allow all traffickers of cocaine to avoid the harsher penalties set forth in § 7508 by merely

> The provisions of this title shall be construed according to the fair import of their terms but when the language is susceptible of differing constructions it shall be interpreted to further the general purposes stated in this title and the special purposes of the particular provision involved. The discretionary powers conferred by this title shall be exercised in accordance with the criteria stated in this title and, in so far as such criteria are not decisive, to further the general purposes stated in this title.
> 18 Pa. C.S.A. § 105.

distributing cocaine or its derivatives with an amount of mixture of another product that would bring the weight of cocaine below the proscribed weight. The legislature in its study of this social problem was too aware of the realities in the subterfuge of drug dealers to intend the "fair import" of this legislation to be interpreted in appellant's favor.

The other question in this case is whether extrapolation of the total weight of contraband from samplings is proper. At trial the Commonwealth presented a chemist's analysis of the substance seized from appellant. The chemist analyzed two randomly selected packets of the twenty-two packets submitted and found that each of the two packets contained cocaine, or its derivatives with a mixture of another product and calculated the amount of cocaine in the twenty-two packets to be 2.21 grams. Appellant contends again that only the weight of pure cocaine may be considered by the court to meet the proscribed weight. This argument would require that each molecule of substance seized, whether in the form of grain, leaf or powder be analyzed to determine the presence of cocaine or its derivatives. We addressed this issue in *Commonwealth v. Lisboy*, 392 Pa.Super. 411, 573 A.2d 222 (1990) and in *Commonwealth v. Minott*, 395 Pa.Super. 552, 577 A.2d 928 (1990). We found in essence that when calculating the proper weight of a controlled substance for purposes of determining whether the mandatory minimum sentence was required to be imposed, the court must consider the combined weight of both the controlled substance and any product contained in the mixture.[4]

We said in *Commonwealth v. Minott, supra,* 395 Pa.Superior Ct. at 559, 577 A.2d at 931, that "[t]he practice of testing representative samples of larger quantities of drugs and extrapolating therefrom the total narcotics content of an illegal substance is well accepted." This method of

4. Although an application for allowance of appeal has been filed in *Commonwealth v. Lisboy*, 480 E.D. allocatur Dkt.1990, we are satisfied at this point with our present holding.

detecting the quantity of substances in illegal drug trafficking was approved in *Commonwealth v. Gorodetsky,* 178 Pa.Super. 467, 115 A.2d 760 (1955) and allows for the total weight of "substance" to include the proscribed narcotics together with a mixture of any other product. In *Gorodetsky,* a chemist testified that his analysis of representative samples of eight tablets sold by defendant to a police informant permitted him to conclude that each of the tablets contained more than one-fourth (¼) gram of morphine. This evidence was held sufficient to sustain the defendant's conviction of possessing or delivering more than the statutorily prohibited amount of the illegal substance. Other jurisdictions have also permitted the use of extrapolation in determining the quantity of illegal drugs. *See, e.g., Mullins v. State,* 277 Ark. 93, 639 S.W.2d 514 (1982) (trial judge could find from representative sampling and testing of ten of one hundred tablets seized and found to contain methaqualone that the other ninety tablets were identical); *Pama v. State,* 552 So.2d 309 (Fla.Dist.Ct.App.1989) (evidence that experienced law enforcement officer examined twenty bales of a seized substance and identified those bales as containing marijuana was adequate proof that at least twenty of the bales seized contained marijuana); *Asmer v. State,* 416 So.2d 485 (Fla.Dist.Ct.App.1982) (one thousand tablets weighing 795.7 grams were seized; one tablet was tested and found to contain methaqualone; appellant's conviction of trafficking in more than two hundred grams of methaqualone upheld); *Commonwealth v. Shea,* 28 Mass.App.Ct. 28, 545 N.E.2d 1185 (1989) (no basis for reversal of conviction for cocaine trafficking where only five infrared and four ultraviolet tests were made on a total of nine bags seized); *State v. Anderson,* 76 N.C.App. 434, 333 S.E.2d 762 (1985) (evidence sufficient to support finding that defendant possessed more than four grams of heroin where fourteen packets were seized and random samples with a total weight of one gram were taken from three packets); *State v. Mattox,* 13 Ohio App.3d 52, 468 N.E.2d 353 (1983) (evidence that random sample of five tablets taken from ten tablets that defendant had sold police officer contained LSD

was substantial evidence from which court could properly conclude beyond a reasonable doubt that all ten tablets contained LSD); *State v. Selph*, 625 S.W.2d 285 (Tenn.Crim. App.1981) (evidence sufficient to convict appellant of selling more than two hundred grams of methaqualone where five tablets of five thousand tablets seized were tested and found to contain methaqualone weighing a total of 1500 milligrams; total weight of tablets seized was 3,824 grams).

The extrapolation of drug quantities was approved in the context of the sentencing phase of a criminal process in *United States v. Fuentes*, 877 F.2d 895 (11th Cir.1989), *cert. denied*, —— U.S. ——, ——, 110 S.Ct. 347 & 516, 107 L.Ed.2d 335 & 517 (1989). In that case, coast guardsmen observed brown objects being thrown from a vessel which they were pursuing. Approximately two hundred fifty to four hundred such objects were observed, and were characterized at trial as identically packaged bales. One of these bales, weighing 27.65 grams and identified as a mixture containing marijuana, was entered into evidence. The court concluded that the evidence supported a finding that appellant possessed a mixture containing marijuana well in excess of the statutory figure of one thousand kilograms. *See* The Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 960 (1988) (setting forth updated mandatory minimum sentencing provisions of the Act).

Judgment of sentence is affirmed.