COMMONWEALTH of Pennsylvania, Appellee

v.

James Edward HARLEY, Appellant.

Superior Court of Pennsylvania.

Submitted Jan. 2, 2007.

Filed May 25, 2007.

Holly M. Kloos, Reading, for appellant.

Jason P. Lutcavage, Reading, for appellee.

BEFORE: ORIE MELVIN, KLEIN, and JOHNSON, JJ.

OPINION BY JOHNSON, J.:

¶ 1 In this case, we consider, *inter alia*, whether the Commonwealth may properly determine the total weight of a controlled substance found separated into small ziplock bags by randomly selecting, emptying and weighing less than the total amount of bags to determine the average weight of a single bag and then extrapolating and subtracting this weight from the combined total weight to determine the weight of the controlled substance. Here, the trial court imposed an enhanced sentence in accordance with the mandatory minimum sentencing provisions of 18 Pa. C.S. section 7508 based upon the weight of the controlled substance. The defendant in this case, James Edward Harley, contends that the weighing of only some of the ziplock bags does not account for the variances between the bags and therefore the total weight of the controlled substance was inaccurate. Harley argues that because the total weight was incorrect, the trial court erred in imposing a longer mandatory minimum sentence than is required under the statute. We conclude that the Commonwealth's method of weighing less than the total amount of bags to find the average weight of an empty ziplock bag did account for the variances between the bags and is therefore legally acceptable. Accordingly, we affirm the judgment of sentence.

¶ 2 Harley appeals from the judgment of sentence imposed following his convictions of Possession of a Controlled Substance and Possession with Intent to Deliver a Controlled Substance. *See* 35 P.S. §§ 780–113(a)(16), 780–113(a)(30) (respectively). The trial court set forth the relevant underlying facts:

At approximately 2:00 a.m. on August 28, 2005, Officer Cheryl Gelsinger of the Reading Police Department was driving alone in uniform in the City of Reading, Berks County, Pennsylvania, when she noticed a vehicle parked in the 1000 block of Clover Street where parking was prohibited. She stopped her vehicle and walked to the parked vehicle, which was running with its headlights and taillights lit.

Officer Gelsinger called police dispatch to relay the license plate number and then approached the driver's window. The driver's window was open and the sole occupant sat unconscious in the driver's seat. The occupant was the defendant, James Harley. There was a white powdery substance in his left nostril and he was sweating abnormally profusely given the climate at the time.

Officer Gelsinger attempted to awaken [Harley] by yelling to him. After approximately two minutes, the defendant gained consciousness but seemed disoriented. Officer Gelsinger asked whether he was all right [sic], what he was doing there, and to see his driver's license. Officer Wendell Buck, Jr. arrived as backup while Officer Gelsinger was talking with the defendant. The defendant said he was going to visit his aunt but instead parked and fell asleep. Officer Gelsinger asked the defendant to turn off the engine and exit the vehicle.

Officer Gelsinger decided to arrest [Harley] based on information unrelated to this case. During a search of [Harley] incident to the arrest, she located $480 in United States currency, a pack of cigarettes, a lighter, and a clear sandwich bag containing eighty-seven small blue zip locked bags which each contained crack cocaine. The cocaine was

sent to the Pennsylvania State Police Crime Lab in Bethlehem to confirm that it was cocaine and to determine the weight. The small zip lock bags of crack cocaine were of the type normally sold for ten dollars each in Reading. A cellular telephone had been on [Harley's] lap when Officer Gelsinger first approached. No empty packaging material or paraphernalia for using drugs was located in the defendant's possession.

Trial Court Opinion (T.C.O.), 7/24/06, at 2–3.

¶ 3 On August 29, 2005, Officer Gelsinger filed a criminal complaint charging Harley with one count each of possession of a controlled substance and possession with intent to deliver a controlled substance. The trial court held a preliminary hearing on September 2, 2005, wherein both charges were bound over for trial. On October 24, 2005, the Commonwealth filed notice of its intention to invoke the mandatory minimum sentencing provisions of 18 Pa.C.S. section 7508. The trial court held a jury trial on February 1 and 2, 2006. At trial, Larissa Sorochika, a forensic scientist with the Pennsylvania State Police Regional Laboratory testified that the substance found in the 87 packets was crack cocaine and that the aggregate weight was 10.2 grams. Pasquale Leporace, a criminal investigator with the Reading Police Department, testified that in his expert opinion, Harley possessed all 87 packets with the intent to deliver them because of the packaging, the number of packets and weight of the crack cocaine, economic considerations, common practices in Reading drug trade, the lack of used packaging and paraphernalia, a cell phone, and the $480 found on Harley. A jury found Harley guilty on both counts.

¶ 4 The trial court, the Honorable Jeffrey K. Sprecher, held a sentencing hearing on February 28, 2006, to determine the applicability of 18 Pa.C.S. section 7508. Section 7508 subjects individuals convicted of drug offenses under 35 P.S. section 780–113(a)(30) to longer terms of incarceration if they had been previously convicted under the same section. See 18 Pa.C.S. § 7508(a)(2). The sentences for the second conviction depend upon the weight of controlled substance in the second offense—if a defendant had intended to distribute more than ten grams but less than one hundred grams, he would be given a longer sentence than if he intended to distribute less than ten grams. Here, Harley had been convicted under 35 P.S. section 780–113(a)(30) on July 14, 1998. At sentencing, Harley, seeking a lesser sentence, argued that he did not intend to deliver over ten grams of crack cocaine because he planned to use between ten and twenty packets for personal consumption. The trial court found that Harley intended to deliver all 10.2 grams and accordingly sentenced him to five to ten years' imprisonment under 18 Pa.C.S. section 7508(a)(2)(ii). Harley filed a post-sentence motion which the trial court denied on April 25, 2006. Harley filed a notice of appeal and the trial court ordered him to file a concise statement of matters complained of on appeal. Harley filed a statement raising the issues of the trial court's finding that he intended to distribute all 10.2 grams of crack cocaine and the constitutionality of 18 Pa.C.S. section 7508. The trial court, in its Rule 1925(a) Opinion, found merit in Harley's claims as to his intent to consume some of the 10.2 grams of crack cocaine and invites this Court to reverse its initial findings.

¶ 5 On appeal, Harley raises the following questions for our review:

1. DID THE COMMONWEALTH FAIL TO ESTABLISH BY A PREPONDERANCE OF THE EVIDENCE THAT APPELLANT POSSESSED AT LEAST 10

GRAMS OF COCAINE WITH THE INTENT TO DELIVER PURSUANT TO 18 PA.C.S.A. § 7508(A)(2)(ii) WHEN APPELLANT INTENDED TO USE 20 OF THE 87 BAGGIES (I.E. 2.34 GRAMS) OF COCAINE FOR PERSONAL USE, REDUCING THE TOTAL AMOUNT HE INTENDED TO SELL TO 7.86 GRAMS, AND/OR WHEN TESTIMONY AT TRIAL INDICATED A POSSIBLE DISCREPANCY IN WEIGHT OF UP TO 1.74 GRAMS REDUCING THE TOTAL AMOUNT OF THE SUBSTANCE HE POSSESSED TO 8.46 GRAMS, AND WHEN THE TRIAL COURT AGREED WITH APPELLANT THAT THE COMMONWEALTH FAILED TO MEET THEIR BURDEN OF PROOF FOR SENTENCING PURPOSES?

2. DO THE PROVISIONS OF 18 PA. C.S.A. § 7508 VIOLATE THE FEDERAL AND STATE EQUAL PROTECTION CLAUSES BY CREATING CLASSIFICATIONS WHICH UTILIZE A PRIOR CONVICTION OF POSSESSION WITH INTENT TO DELIVER A CONTROLLED SUBSTANCE TO ENHANCE THE MANDATORY SENTENCE UNDER THE SECOND–TIME OFFENDER WEIGHT MANDATORY TERM, WHILE FAILING TO CONSIDER WHETHER THE PRIOR CONVICTION INVOLVED A WEIGHT MANDATORY, THUS CREATING A CLASSIFICATION THAT FAILS TO TREAT SIMILARLY SITUATED PEOPLE SIMILARLY AND DOES NOT BEAR A FAIR AND SUBSTANTIAL RELATION TO THE OBJECTIVE OF THE LEGISLATION?

Brief for Appellant at 5 (numbers added to improve readability).

¶ 6 In support of his first question, Harley contends that he should have received a lesser mandatory minimum sentence under section 7508 as he intended to distribute less than ten grams of the crack cocaine. Brief for Appellant at 14. Harley argues that the Commonwealth did not prove that he intended to distribute 10.2 grams of crack cocaine. Brief for Appellant at 14. In effect, Harley seeks a mandatory minimum sentence of three years instead of five years under 18 Pa.C.S. section 7508(a)(2). We recognize that while the trial court rejected this argument during the sentencing, it reconsidered its conclusion in its Rule 1925(a) opinion and invites this Court to remand the case for re-sentencing. While we acknowledge the trial court's reconsideration of its conclusion, we find no merit in Harley's first argument.

¶ 7 Preliminarily, we note "that the amount of drugs attributed to Appellant's possession is relevant for purposes of sentencing and does not constitute an element of the offenses of which he was convicted." *Commonwealth v. Johnson*, 920 A.2d 873, 2007 WL 730271, at ¶ 22 (Pa.Super.2007) (citing 35 P.S. § 780–113(a)(30)). "Therefore, the Commonwealth was required to prove the quantity of drugs for which Appellant was liable by a preponderance of the evidence, not beyond a reasonable doubt." *Id.* "Ordinarily, a challenge to the application of a mandatory minimum sentence is a nonwaivable challenge to the legality of the sentence. This is so because, by statute, courts have no authority to avoid imposing the mandatory minimum, assuming certain factual predicates apply." *Commonwealth v. Littlehales*, 915 A.2d 662, 664 (Pa.Super.2007) (internal citation and footnote omitted). "Issues relating to the

legality of a sentence are questions of law, as are claims contesting a court's application of a statute." *Commonwealth v. Bongiorno*, 905 A.2d 998, 1002 (Pa.Super.2006) (*en banc*). "Our scope of review in such matters is plenary." *Id.*

¶ 8 Here, Harley sets forth alternative arguments to demonstrate that he did not intend to deliver over ten grams of crack cocaine. Harley first argues that he possessed less than ten grams with an intent to deliver because he planned to use a portion of the crack cocaine. Brief for Appellant at 13–16. Alternatively, Harley argues that the procedure employed by the Commonwealth in weighing the drugs was flawed as it did not account for the variances in weight in the ziplock bags containing the crack cocaine. Brief for Appellant at 17–18. We will address each of these arguments in turn.

¶ 9 First, Harley contends that the testimony presented at the sentencing hearing demonstrates that he did not intend to deliver all 87 packets or 10.2 grams of crack cocaine. Brief for Appellant at 13. Instead, Harley argues that he was planning to use between ten and twenty packets for personal use and sell the rest to support his heroin addiction. Brief for Appellant at 16. Harley premises his entire argument upon the believability of his testimony during the sentencing hearing.

¶ 10 At the time of his arrest, the police found $480, a pack of cigarettes, a lighter, a clear sandwich bag containing eighty-seven blue zip locked bags which each contained crack cocaine, and a cellular telephone. No empty packaging material or paraphernalia was located on Harley's person or in his vehicle. Harley argues he was not going to deliver all of the drugs as he conceded that he had a drug problem and that "it would be foreseeable that he intended to use at least some of the cocaine that he possessed for personal use." Brief for Appellant at 17. At sentencing,

Harley stated that he had been addicted to heroin for ten years and that the habit cost him between $200 and $300 a day. Notes of Testimony (N.T.), 2/28/06, at 13, 16. Harley indicated that he did not intend to distribute all of the bags containing crack cocaine; instead, he claims he was going to personally use ten to twenty bags. N.T., 2/28/06, at 12. Further, Harley testified that he combined heroin and crack cocaine to "mellow [him] out evenly." N.T., 2/28/06, at 14. Harley also testified that he intended to sell the remaining crack cocaine to support his heroin addiction. N.T., 2/28/06, at 15–16. The trial court, however, did not find Harley's testimony at sentencing that he intended to use some of the crack cocaine to be credible. N.T., 2/28/06, at 34. The trial court, relying on the testimony presented by the Commonwealth at the jury trial, found that Harley intended to distribute all 87 packages of crack cocaine. N.T., 2/28/06, at 34. Although the trial court invites us to do so in its 1925(a) opinion, we will not disturb this determination. *See Commonwealth v. Kinney*, 863 A.2d 581, 584 (Pa.Super.2004) (reiterating that credibility determinations are made by the trial court).

■ ¶ 11 During the jury trial, Criminal Investigator Pasquale Leporace testified that in his expert opinion, all 87 packets of crack cocaine were possessed with an intent to deliver rather than for personal use. N.T., 2/1/06, at 120–23. Investigator Leporace noted that the crack cocaine was packaged in a manner which would sell for ten dollars a bag on the streets of Reading. N.T., 2/1/06, at 121. He further noted that 10.2 grams of crack cocaine bought in bulk would cost $250 dollars on the street while the packaging found on Harley would bring in $870. N.T., 2/1/06, at 121–22. Investigator Leporace stated that the fact the 87 baggies were in a larger plastic bag indicated Harley was preparing

to distribute the drugs as it "makes it easy to access the drugs, easy to dispose of the drugs and easy to conceal the drugs." N.T., 2/1/06, at 121. Investigator Leporace concluded that the lack of use paraphernalia and the $480 on Harley's person indicated an intent to deliver. N.T., 2/1/06, at 122–23. This evidence taken together is sufficient to demonstrate Harley intended to distribute all 10.2 grams of the crack cocaine. *See Commonwealth v. Drummond*, 775 A.2d 849, 854 (Pa.Super.2001) (*en banc*) (finding sufficient evidence to demonstrate intent to deliver drugs where $75 and two packets of cocaine were seized from defendant's person, three bags of cocaine, $205 in cash, and 30 smaller bags were seized from area where defendant had been sitting, each of these bags was heat sealed, and officer, who was expert on packaging and distribution of narcotics, testified that someone would not likely possess such large amount of cocaine without intent to sell it); *see also Commonwealth v. Bess*, 789 A.2d 757, 761–62 (Pa.Super.2002) (finding evidence supported defendant's intent to deliver where two and two-tenths grams of cocaine found in a bag were recovered from defendant's buttocks, defendant possessed $158 in cash, and had no drug paraphernalia to use drugs himself); *Commonwealth v. Williams*, 419 Pa.Super. 380, 615 A.2d 416, 418 (1992) (finding sufficient evidence of intent to deliver where police found 5.94 grams of cocaine in eight small zip-lock plastic baggies which were contained in one larger bag and a large amount of cash on defendant and investigating officer testified that this was the common packaging on the street). Based upon the credibility determinations made by the trial court during the jury trial and sentencing, we conclude that the evidence was sufficient to demonstrate Harley intended to distribute all 87 bags or 10.2 grams of the crack cocaine.

¶ 12 Alternatively, Harley argues that the Commonwealth's procedures in weighing the crack cocaine failed to establish the correct total weight of the drugs as the weight of the bags containing the cocaine varied bag-to-bag and hence the total amount of drugs is unclear. Brief for Appellant at 17–18. Harley's argument is a condemnation of the procedures employed by the Commonwealth to determine the weight of a controlled substance.

■ ¶ 13 Here, the large bag contained packets of crack cocaine packaged in small identical ziplock bags. At the jury trial, the Commonwealth presented a forensic scientist's analysis of the substance seized from Harley. The forensic scientist, Larissa Sorochka, weighed the cocaine and determined it to have a total weight of 10.2 grams. N.T., 2/1/06, at 74. To determine this weight, Sorochka first weighed all 87 ziplocked bags containing the drugs together. N.T., 2/1/06, at 78–79. After determining this weight, she emptied fourteen randomly selected bags and weighed these empty bags together. N.T., 2/1/06, at 79. She then divided this weight by fourteen to achieve an average weight for an empty ziplock bag. N.T., 2/1/06, at 79. She took this average and multiplied by 87 to determine the total weight of the packaging. N.T., 2/1/06, at 80–81. She subtracted the weight of the packaging from the weight of the packaging and the drugs together to achieve the final total of 10.2 grams. N.T., 2/1/06, at 74, 81.

¶ 14 Harley argues that this method of determining the weight of the cocaine was inaccurate as Sorochka testified that there is a variation of two one-hundredths of a gram between empty ziplock bags. Brief for Appellant at 18 (citing N.T., 2/1/06, at 79–80). Harley argues that this "discrepancy in each bag could total as much as 1.74 grams for the combined weight of the 87 bags." Brief for Appellant at 18. In

effect, Harley argues that the Commonwealth's extrapolation of the weight of the 87 ziplock bags did not account for this variance and therefore the weight of the crack cocaine was not accurately shown. However, Harley does not present any case law to support his argument and instead relies purely upon the trial court's Rule 1925(a) opinion. *See* Pa.R.A.P. 2119(a) (stating argument section must contain "such discussion and citation of authorities as are deemed pertinent.").

¶ 15 It is well-settled that "[t]he practice of testing representative samples of larger quantities of drugs and extrapolating therefrom the total narcotics content of an illegal substance is well accepted." *Commonwealth v. Minott,* 395 Pa.Super. 552, 577 A.2d 928, 931 (1990). In *Minott,* a plastic bag containing 50 packets was seized from the defendant. *See id.* at 929. Two of the packets were analyzed and found to contain 229 and 230 milligrams of cocaine respectively. *See id.* The trial court determined by extrapolation from the weight of these two packets that the contents of the entire 50 packets weighed approximately 10 grams. *See id.* Our Court held that testing random samples to extrapolate the net weight was well accepted, and this method was reasonable and appropriate for determining whether the illegal substance met the weight requirement of the statute under which the defendant was convicted. *See id.* at 931–32. Similarly, in *Commonwealth v. Perez,* 397 Pa.Super. 574, 580 A.2d 781 (1990), our Court found that the extrapolation of data from two randomly selected packets from the twenty-two packets submitted was sufficient to accurately calculate the amount of cocaine in the packets to be 2.21 grams. *See id.* at 783; *see also Johnson,* 920 A.2d 873, 2007 WL 730271, at ¶¶ 24–25 (finding extrapolation of the quantity of heroin by analyzing one packet from each of the three bundles of heroin provided an accurate weight).

¶ 16 We must therefore determine whether the weighing and averaging of fourteen randomly selected identical bags accounted for the variances in weight between the individual bags. Here, the scientist measured the weight of over 15% of the total number of ziplock bags. In both *Minott* and *Perez,* our Court concluded that the testing and weighing of the contents of two packets, or 4% and 9% of the total contents of the bags respectively, was sufficient to use the extrapolation method and determine the overall weight of the drugs. Our acceptance of this method of calculation recognized *sub silentio* that extrapolation would account for any variances between the contents of the bags and bags themselves. Similarly, by randomly selecting fourteen of the identical bags to weigh and average, the scientist was accounting for any variances in the bags. In light of *Minott* and *Perez,* we find this extrapolation to be an accurate indicator of the total weight of the bags. Accordingly, we conclude that in this case, the averaging of fourteen empty identical bags or 15% of the total bags accurately demonstrated the average weight of one bag and accounted for any variances between the bags. As Harley has cited to no case law to the contrary, we conclude that the extrapolation conducted by the Commonwealth accurately determined the weight of the drugs found on Harley. For the foregoing reasons, we find no merit in Harley's first question presented on appeal.

■ ¶ 17 In his second question, Harley contends that the sentencing provision at 18 Pa.C.S. section 7508 violates the Equal Protection Clause of the Federal and State Constitutions. Brief for Appellant at 20. Harley argues that the statute violates the equal protection clause because it does not account for the weight of the prior con-

trolled substance sale. Brief for Appellant at 20–21.

■ ¶ 18 Our Court exercises plenary review over questions of law, including the constitutionality of a statute. *See Commonwealth v. McCoy*, 895 A.2d 18, 24 (Pa.Super.2006) (citing *Commonwealth v. Atwell*, 785 A.2d 123, 125 (Pa.Super.2001)). Further, our Court recognizes that the Equal Protection guarantee under the Pennsylvania Constitution is analyzed under the same standards as the federal constitution. *See Commonwealth v. Etheredge*, 794 A.2d 391, 396 (Pa.Super.2002). When reviewing the constitutionality of a statute, our Court has reaffirmed that:

> there is a strong presumption in the law that legislative enactments do not violate the constitution. Moreover, there is a heavy burden of persuasion upon one who challenges the constitutionality of a statute. While penal statutes are to be strictly construed, the courts are not required to give the words of a criminal statute their narrowest meaning or disregard the evident legislative intent of the statute. A statute, therefore, will only be found unconstitutional if it "clearly, palpably and plainly" violates the constitution.

*McCoy*, 895 A.2d at 29–30 (citation omitted). "All doubt is to be resolved in favor of sustaining the legislation." *Commonwealth v. Eicher*, 413 Pa.Super. 235, 605 A.2d 337, 351 (1992) (citation omitted).

¶ 19 The statute at issue here states in pertinent part:

> § 7508. **Drug trafficking sentencing and penalties**

> \* \* \* \*

> (2) A person who is convicted of violating section 13(a)(14), (30) or (37) of The Controlled Substance, Drug, Device and Cosmetic Act where the controlled substance or a mixture containing it is classified in Schedule I or Schedule II under section 4 of that act and is a narcotic drug shall, upon conviction, be sentenced to a mandatory minimum term of imprisonment and a fine as set forth in this subsection:

> \* \* \* \*

> (ii) when the aggregate weight of the compound or mixture containing the substance involved is at least ten grams and less than 100 grams; three years in prison and a fine of $15,000 or such larger amount as is sufficient to exhaust the assets utilized in and the proceeds from the illegal activity; however, if at the time of sentencing the defendant has been convicted of another drug trafficking offense: five years in prison and $30,000 or such larger amount as is sufficient to exhaust the assets utilized in and the proceeds from the illegal activity;

18 Pa.C.S. § 7508(a)(2)(ii).

¶ 20 The constitutionality of section 7508 has previously been addressed by our Court in *Commonwealth v. Plass*, 431 Pa.Super. 251, 636 A.2d 637 (1994) (*en banc*), and *Eicher*. In *Plass*, our Court reviewed an equal protection challenge to section 7508 and stated that:

> The classification established by the statute singles out drug offenders who have been convicted of a previous drug offense at the time of sentencing on the principal offense. This class is neither "suspect"—it has not been traditionally oppressed or discriminated against—nor is the classification designed to deprive the class of any fundamental right. The classification will therefore survive equal protection scrutiny so long as it is not arbitrary and rests upon some ground of difference *having a fair and substantial relation to the object of the legislation so*

that all persons in similar circumstances shall be treated alike.

*Id.* at 641 (citations and internal quotation marks omitted); *see also Eicher,* 605 A.2d at 352 (concluding that convicted drug dealers are not a member of a suspect or sensitive class and therefore "only a minimum level of scrutiny need be applied to determine whether the statute bears a rational relationship to a legitimate legislative objective."). Our Court found that section 7508 bears a rational relationship to the object of the legislation as it "is designed to alleviate the ravages of drug trafficking and drug abuse in our society by subjecting convicted drug dealers to greater periods of confinement." *Plass,* 636 A.2d at 641. "Further, the legislature imposed more severe penalties on those individuals who were found to possess and/or deliver greater quantities of drugs." *Eicher,* 605 A.2d at 352. "[T]he legislature's scheme of imposing harsher penalties and longer periods of confinement on convicted drug dealers is rationally related to the laudable goal of attempting to put an end to the pernicious effects which drugs and the illicit drug trade have inflicted upon our society." *Id.; see also Commonwealth v. Crowley,* 413 Pa.Super. 554, 605 A.2d 1256, 1260 (1992) (stating that "[s]ection 7508 was enacted to deal with an ever burgeoning area of criminal activity—a drug epidemic, the effect of which pervades every aspect of our daily lives."). Moreover, the statute is not applied arbitrarily as "[a]nyone—regardless of race, gender, religion, or other characteristic—convicted of a previous drug offense will be sentenced under the statute." *Commonwealth v. Miller,* 765 A.2d 1151, 1155 (Pa.Super.2001) (*abrogated on other grounds by Commonwealth v. Melendez–Rodriguez,* 856 A.2d 1278, 1287–88 (Pa.Super.2004) (*en banc* )).

¶ 21 Harley argues that the classification of all convicted drug dealers is not rationally related to the legislature's goals of punishing repeat offenders as it "encompasses *all* persons currently charged under a weight mandatory who have been previously convicted of delivering or possessing with intent to deliver any amount of a controlled substance, regardless of whether their first delivery was subject to a weight mandatory." Brief for Appellant at 24 (emphasis in original). We disagree. Harley has failed to demonstrate that persons who are convicted of selling small amounts of a controlled substance in their first delivery should be subjected to a higher level of scrutiny than persons who sold large amounts of a controlled substance. The goal of the legislature here was to impose harsher penalties on those drug dealers that had been previously convicted for selling drugs in order "to alleviate the ravages of drug trafficking and drug abuse in our society[.]" *Plass,* 636 A.2d at 641.

■ ¶ 22 Although Harley may have been convicted of dealing a small amount of drugs in his first offense, the legislature still found this to be a violation of the Crimes Code. Harley does not demonstrate that dealing a small amount of drugs was not considered by the legislature in deciding to punish recidivist dealers. Indeed, "the intent of recidivist legislation is to deal with persons as recidivists over a broad spectrum of time and criminal activity[.]" *Commonwealth v. Eyster,* 401 Pa.Super. 477, 585 A.2d 1027, 1033 (1991) (*en banc* ). Furthermore, Harley fails to show that the legislature's failure to parse out punishment among various recidivists violates the equal protection clause and makes the statute unconstitutional. Our Court has recognized specifically that:

[I]t is impossible to provide a sentencing code which covers every possible contingency that may arise in sentencing. It is better for consistency and uniformity

of interpretation to be applied across the board for the vast majority of cases while a few defendants in infrequent cases receive a benefit, than to create a cumbersome, confusing and error prone system which breeds continued litigation.

*Id.* As such, we find that section 7508 is rationally related to the legislature's goal in fighting the spread of drugs in communities regardless of the amount of drugs possessed in the first offense. Thus, we find no merit in Harley's second question on appeal.

¶ 23 For the foregoing reasons, we affirm the judgment of sentence.

¶ 24 Judgment of sentence AF-FIRMED.