J-S39016-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOSHUA ADAM SERETTI | |
| Appellant | No. 1474 WDA 2013 |

Appeal from the PCRA Order of August 9, 2013
In the Court of Common Pleas of Butler County
Criminal Division at No.: CP-10-CR-0001099-2011

BEFORE:  BENDER, P.J.E., WECHT, J., and PLATT, J.[*]

MEMORANDUM BY WECHT, J.:                    **FILED AUGUST 08, 2014**

Joshua Seretti appeals the August 9, 2013 order dismissing his petition for relief under the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-46.  Counsel for Seretti has filed with this Court a petition to withdraw as counsel and a ***Turner/Finley***[1] "no-merit letter."  We affirm the order dismissing Seretti's PCRA petition, and we grant counsel's motion to withdraw.

In its August 9, 2013 "Memorandum Opinion and Order of Court" dismissing Seretti's PCRA petition, the PCRA court set forth the relevant procedural and factual history of this case as follows:

_____

[*]     Retired Senior Judge assigned to the Superior Court.

[1]     ***See Commonwealth v. Turner***, 544 A.2d 927, 928-29 (Pa. 1988); ***Commonwealth v. Finley***, 550 A.2d 213, 214-15 (Pa. Super. 1988).

The evidence adduced at [Seretti's jury] trial demonstrated the following. Detective Glenn Hairston, a twenty-four year veteran of the Pittsburgh Police Department came into contact with Ronald Leaf, who indicated that, through [Seretti], he was able to provide an out-of-state source who sold large amounts of heroin. On February 25, 2010, Detective Hairston met with other officers and Mr. Leaf for the purpose of setting up a narcotics transaction. Mr. Leaf provided consent for Agent Timothy Yesho, an agent with the Bureau of Narcotics Investigation of the Office of the Attorney General, to record conversations between himself and [Seretti]. During the meeting, an incoming telephone call was received by Mr. Leaf from [Seretti]. A meeting was arranged near a tattoo shop in the Mount Washington area of Pittsburgh. Prior to departing for the arranged meeting, Mr. Leaf and his vehicle were searched and surveillance resources were deployed near the meeting location. Mr. Leaf was given $9390 with which to purchase drugs.

Shortly after Mr. Leaf arrived at the tattoo shop, [Seretti] and a female driver arrived. After the three went into the tattoo shop for a short time, Detective Hairston received a telephone call from Mr. Leaf in which he indicated that the three would be travelling to a convenience store in Cranberry [Township, Butler County, Pennsylvania.] As the three left the tattoo parlor, the police maintained surveillance as they travelled to the convenience store. Once there, [Seretti] entered Mr. Leaf's vehicle for a period of time. During that time, [Seretti] made and received telephone calls. He then exited the vehicle and Mr. Leaf followed [Seretti] to [Seretti's] residence. Once there, the female driver was dropped off and Mr. Leaf continued to follow [Seretti] to the Red Roof Inn in Cranberry. As Mr. Leaf had remained in contact with Detective Hairston while driving, the police were able to take up surveillance positions outside of the Red Roof Inn.

Once at the Red Roof Inn, [Seretti] and Mr. Leaf exited their vehicles and [Seretti] led Mr. Leaf to room 218. One of them knocked on the door, it opened, and the two entered. A black male individual was observed to be inside of the room. Mr. Leaf and [Seretti] remained inside for a period of time. The two then exited the hotel room, left the Red Roof Inn in their respective vehicles, and parted ways. A short time later, Mr. Leaf, with whom the police had maintained visual contact, was instructed to pull over. After he pulled over, Agent Yesho approached his

vehicle and retrieved from the trunk the narcotics that had been purchased. The suspected narcotics were packaged in a brown paper bag that contained 1832 glassine packets stamped American Lee that were packaged into nineteen plastic sandwich bags. The suspected narcotics were then secured by the police. Mr. Leaf, as well as Detective Hairston, Agent Yesho, and others, returned to Police Headquarters. Once there, Mr. Leaf and his vehicle were searched and Mr. Leaf was debriefed. Laboratory testing later revealed the suspected narcotics were heroin weighing 28.0 grams. Mr. Leaf identified Dwayne McIntyre via photograph as the individual who sold him the heroin.

On March 13, 2010, Agent Yesho received a telephone call from Mr. Leaf who indicated that [Seretti] had contacted him in reference to purchasing heroin. The heroin, according to Mr. Leaf, was available from the same individual who sold him heroin on February 25, 2010. After securing police personnel to aid in the investigation, the available officers met at the Lowe's in Monroeville[, Allegheny County, Pennsylvania.] At a point in time, Mr. Leaf returned a call to [Seretti] during which a drug transaction was discussed. It was agreed that Mr. Leaf would pick up [Seretti] at his residence. Prior to that time, Mr. Leaf and his vehicle were searched and Mr. Leaf was provided with $9000 with which to purchase drugs. [Seretti] arranged the amount to be purchased and Mr. Leaf travelled to [Seretti's] residence while surveillance followed him. Mr. Leaf remained at [Seretti's] residence a short time before he and [Seretti] left and traveled to the Cranberry Red Roof Inn.

Once there, the two exited their vehicle and [Seretti] was observed to be talking on a cellular telephone. The two then went back to Mr. Leaf's white Cadillac, got inside, exited the Red Roof Inn parking lot, and travelled south on State Route 19 to the Motel Six. Mr. Leaf and [Seretti] then entered room 340. After a short time—three minutes or less—Mr. Leaf and [Seretti] exited the motel room and returned to Mr. Leaf's white Cadillac. Mr. Leaf was observed placing a blue bag in the trunk of the car and the two then left the motel parking lot and traveled to [Seretti's] residence. The Cadillac was observed exiting the residence with only Mr. Leaf inside. Mr. Leaf was directed to a meeting location. Once there, Agent Yesho took possession of the suspected heroin that had been purchased. Inside of a shoe box and a blue bag, the suspected heroin was divided into 2444 blue glassine bags that were stamped Devil's Advocate.

Laboratory testing later revealed that there was 23.3 grams of heroin.

As part of the investigation, telephone records of [Seretti] were obtained. Upon reviewing those records, two numbers appeared to be significant to Agent Yesho. The first was that of Mr. Leaf, the second was registered to a Delaware subscriber. With respect to the Delaware subscriber, there was a high frequency of calls surrounding February 25, 2010, and March 13, 2010. Analysis of the data comported with other observations made in the course of the investigation. The testimony of Mr. Leaf made it clear that [Seretti] arranged the heroin transactions. It was also clear that Mr. Leaf was aiding the Commonwealth in the hope of receiving leniency.

\*　　\*　　\*

[Seretti] was charged with one count of criminal conspiracy to possess and/or delivery of heroin in violation of [18 Pa.C.S. § 903(a)(1)], two counts of possessing heroin in violation of [35 P.S. § 780-113(a)(16)], two counts each of possession with intent to deliver heroin and delivery of heroin in violation of [35 P.S. § 780-113(a)(30)], and one count of criminal use of a communications facility in violation of [18 Pa.C.S. § 7512(a)]. Following a two-day jury trial, [Seretti] was found guilty of all counts. On May 10, 2012, [Seretti] was sentenced to undergo incarceration in the custody of the Department of Corrections [for an aggregate term of ninety-nine to one hundred ninety-eight months.]

\*　　\*　　\*

[Seretti did not file post-sentence motions or a direct appeal. On October 23, 2012, Seretti filed a *pro se* PCRA petition.] In the PCRA court's view, [Seretti] raises claims of ineffective assistance of counsel based on: 1) the failure to file a requested direct appeal and post-sentence motion; 2) the failure of counsel to investigate the background of Ronald Leaf; and 3) the failure to request a jury instruction relating to Ronald Leaf.

\*　　\*　　\*

Upon receiving the [petition], the [PCRA court] appointed Attorney [Kenneth Harris, Esquire,] to represent [Seretti] and granted leave to file an amended petition under the [PCRA]. Following the grant of an extension of time in which to file an

amended petition, Attorney Harris concluded that such a petition was not necessary and moved to schedule a hearing on [Seretti's] motion. That evidentiary hearing [was] held, and following the [PCRA court's] review of [Seretti's] claims in light of the evidence adduced at the hearing and at [Seretti's] jury trial, the [PCRA court concluded that Seretti was] not due relief under the [PCRA].

Memorandum Opinion and Order of Court, 8/9/2013, at 1-6 (content reorganized for chronological clarity).

On September 9, 2013, Seretti filed a notice of appeal. In response, the PCRA court directed Seretti to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On September 30, 2013, counsel for Seretti filed a timely concise statement, wherein counsel indicated his intention to file a *Turner/Finley* letter to this Court. Nonetheless, counsel indicated that Seretti wanted to pursue the following two issues before this Court:

a. That the [PCRA court] erred in determining that trial counsel was effective with respect to [Seretti's] claim that a post-sentence motion or direct appeal should have been filed.

b. That the [PCRA court] erred in determining that trial counsel was effective relative to the issue of investigating the background of Commonwealth's witness, Mr. Ronald Leaf.

Concise Statement, 9/30/2013, at 1. On October 2, 2013, the PCRA court issued a memorandum opinion, wherein the court incorporated its analysis of the issues raised by Seretti in its August 9, 2013 opinion.

Our standard of review regarding a PCRA court's order is whether the determination of the PCRA court is supported by the evidence of record and

is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for those findings in the certified record. **Commonwealth v. Garcia**, 23 A.3d 1059, 1061 (Pa. Super. 2011) (citing **Commonwealth v. Smith**, 995 A.2d 1143, 1149 (Pa. 2010)).

We first consider whether PCRA counsel has complied with the technical requirements that our courts have established in order for appointed counsel to be released pursuant to the **Turner**/**Finley** paradigm. We previously have explained this procedure as follows:

> Counsel petitioning to withdraw from PCRA representation must proceed under [**Turner**/**Finley** and] . . . must review the case zealously. **Turner**/**Finley** counsel must then submit a "no-merit" letter to the trial court, or brief on appeal to this Court, detailing the nature and extent of counsel's diligent review of the case, listing the issues which petitioner wants to have reviewed, explaining why and how those issues lack merit, and requesting permission to withdraw.
>
> Counsel must also send to the petitioner: (1) a copy of the "no merit" letter/brief; (2) a copy of counsel's petition to withdraw; and (3) a statement advising petitioner of the right to proceed *pro se* or by new counsel.
>
> Where counsel submits a petition and no-merit letter that satisfy the technical demands of **Turner/Finley**, the court — trial court or this Court — must then conduct its own review of the merits of the case. If the court agrees with counsel that the claims are without merit, the court will permit counsel to withdraw and deny relief.

**Commonwealth v. Doty**, 48 A.3d 451, 454 (Pa. Super. 2012) (citations omitted). "[If] counsel submits a petition and no-merit letter that do satisfy the technical demands of **Turner**/**Finley**, [we] must then conduct [our] own review of the merits of the case. If [we agree] with counsel that the claims

are without merit, [we] will permit counsel to withdraw and deny relief." ***Commonwealth v. Wrecks***, 931 A.2d 717, 721 (Pa. Super. 2007) (citing ***Commonwealth v. Mosteller***, 633 A.2d 615, 617 (Pa. Super. 1993)).

We conclude that Seretti's counsel substantially has complied with the technical requirements of ***Turner***/***Finley***. In his letter to this Court, counsel sets forth the two claims that Seretti sought to raise before this Court. ***Turner/Finley*** Letter at 2. Seretti's counsel also provides a brief recitation of the procedural and factual background of the case, including the charges for which Seretti was found guilty and the sentence he received. ***Id.*** at 1. After review, counsel could not glean anything from the record that he believed supported Seretti's appeal. Specifically, counsel concluded that the evidence adduced at the PCRA hearing, when credited by the PCRA court, did not support Seretti's allegations. ***Id.*** at 2. Following his review of the case, counsel concluded that, as he originally noted in the concise statement that he filed on Seretti's behalf, an appeal in this matter would be "wholly frivolous." ***Id.***

Thus, counsel concluded that Seretti was not eligible for PCRA relief. Accordingly, on October 29, 2013, Seretti's counsel filed with this Court a petition to withdraw as counsel. Counsel also sent a letter to Seretti explaining counsel's belief that Seretti's appeal lacks merit. Moreover, the letter advised Seretti that he was permitted to proceed *pro se*, or to retain private counsel to pursue the appeal. Letter, 10/28/2013, at 1.

Based upon the foregoing, we conclude that PCRA counsel has complied substantially with the **Turner**/**Finley** requirements. **See Doty**, *supra*. However, before passing upon PCRA counsel's petition to withdraw, we must conduct an independent review of the entire record. Having done so, we agree with counsel that Seretti's appeal is wholly frivolous.

We begin with the two claims that counsel raised based upon Seretti's desires in the concise statement of errors complained of on appeal. Both claims implicate our well-settled rules governing claims of ineffective assistance of counsel, which are as follows:

> [A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). "Counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him." **Commonwealth v. Colavita**, 993 A.2d 874, 886 (Pa. 2010) (citing **Strickland v. Washington**, 466 U.S. 668, 690 (1984)). In Pennsylvania, we have refined the **Strickland** performance and prejudice test into a three-part inquiry. **See Commonwealth v. Pierce**, 527 A.2d 973, 975-77 (Pa. 1987). Thus, to prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result. **Commonwealth v. Ali**, 10 A.3d 282, 291 (Pa. 2010). "If a petitioner fails to prove any of these prongs, his claim fails." **Commonwealth v. Simpson**, 66 A.3d 253, 260 (Pa. 2013).

*Commonwealth v. Spotz*, 84 A.3d 294, 311 (Pa. 2014) (internal citations modified). We need not analyze "the elements of an ineffectiveness claim in any particular order of priority; instead, if a claim fails under any necessary element of the [*Pierce*] test, the court may proceed to that element first." *Commonwealth v. Lambert*, 797 A.2d 232, 243 n.9 (Pa. 2001). Lastly, we note that the PCRA court's credibility determinations, when supported by the record, are binding upon this Court. *Commonwealth v. Johnson*, 966 A.2d 523, 532 (Pa. 2009).

In Seretti's first listed claim, he contends that trial counsel was ineffective for failing to file both post-sentence motions and a direct appeal on Seretti's behalf. We conclude that these claims lack arguable merit. In this regard, after our own investigation of the record and applicable law, we adopt the PCRA court's thorough and accurate reasoning as our own. The court explained its reasoning as follows:

> [Seretti claims] that counsel rendered ineffective assistance by failing to file a post-sentence motion or a direct appeal. There is an important distinction in the standards applicable to reviewing these claims. The failure by counsel to file a direct appeal where he or she is required to do so, which failure effectively deprives a defendant of not only his or her right [to] counsel at a critical stage in the proceedings but also his or her right to appeal, is the type of failure that comes within the ambit of *United States v. Cronic*, 466 U.S. 648 (1984), and prejudice will be presumed notwithstanding the merits of any such appeal. Under *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), when counsel's constitutionally defective performance deprives a defendant of an appeal that he or she otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim. Counsel, therefore, has a constitutionally imposed duty to consult with his or her client concerning an

appeal where there is reason to think that a rational defendant demonstrated an interest in appealing. *Id.* at 480. With respect to the ineffective assistance of counsel claim based on the failure to file a post-sentence motion challenging the discretionary aspects of sentencing, however, *Cronic* does not apply and the defendant is required to demonstrate prejudice under the *Strickland/Pierce* test. *See Commonwealth v. Reaves*, 923 A.2d 1119, 1129 (Pa. 2007).

At the time of the hearing on [Seretti's] motion, the evidence demonstrated that following sentencing, Assistant Public Defender Smith met with [Seretti] at the Butler County Prison for more than an hour. He informed [Seretti] of the risks attendant to filing an appeal or a post-sentence motion given the flat sentences that were imposed by the court. In essence, Attorney Smith advised [Seretti] that if the sentence was challenged, [Seretti] faced the possibility of receiving a more severe maximum sentence. During the discussion, Attorney Smith discussed with [Seretti] issues that could be raised on appeal. Attorney Smith concluded that none of the issues were strong, though he advised [Seretti] that "he could appeal if he wanted to." At the conclusion of the meeting, Attorney Smith asked [Seretti] if he desired to file a post-sentence motion or an appeal. [Seretti] indicated at that point that he was satisfied with his sentence. Both [Seretti] and Attorney Smith were of a mind that neither a post-sentence motion nor a direct appeal would be filed.

With respect to [Seretti's] claim that counsel was ineffective for failing to file a post-sentence motion, [] no testimony or other evidence [was] offered at the time of the hearing to demonstrate prejudice as a result of such a failure. Accordingly, the claim must fail. With respect to [Seretti's] claim of ineffective assistance of counsel based on a failure to file an appeal, [] the claim must fail because following a consultation with counsel, during which counsel advised [Seretti] of his opinion that there were no meritorious grounds for appeal and that a challenge could result in a more severe sentence, [Seretti] did not ask Attorney Smith to file an appeal when Attorney Smith asked him if he so desired. [Seretti] instead indicated that he was happy with his sentence. The same is true with respect to the post-sentence motion. Attorney Smith discussed with [Seretti] the potential hazards relating to the filing of a motion, and following that discussion, [Seretti] did not request that Attorney Smith file such a motion.

Memorandum Opinion and Order of Court, 8/9/2013, at 8-10 (citations modified). Based upon the PCRA court's apparent credibility determinations, it is clear to us that Seretti's claims lack arguable merit in that he never requested either a post-sentence motion or an appeal be filed on his behalf. Consequently, these claims necessarily fail.

In the second claim identified by counsel, Seretti contends that trial counsel was ineffective for failing to investigate Mr. Leaf's background, presumably for impeachment information. Again, we adopt the learned PCRA court's analysis of this claim as our own. The court stated the following regarding the court's rejection of this claim:

> As testified to by [Seretti] at the time of the [PCRA] hearing, [Seretti] believes counsel was ineffective because he failed to investigate the background of Mr. Leaf as well as his arrangement with the Commonwealth. Specifically, [Seretti] believes counsel should have sought the particulars of what the Commonwealth was offering to Mr. Leaf in exchange for his part in acting as a confidential informant and his testimony at trial.
>
> Attorney Smith testified that prior to trial, he sought from the Commonwealth the identity of the confidential informant. The Commonwealth, Attorney Smith testified, disclosed Mr. Leaf's identity, provided his criminal history including any *crimen falsi*, and indicated that Mr. Leaf was expected to testify at trial. It is also clear that Attorney Smith was aware of the consideration offered to Mr. Leaf. This information, Attorney Smith testified, when combined with information provided by [Seretti], was sufficient for him to prepare adequately for trial and to devise a strategy. That strategy consisted of portraying Mr. Leaf as a self-serving individual who was looking to throw [Seretti], his friend, "under the bus" in order to receive consideration from the government, as well as arguing that [Seretti] was overcharged by the government since he only facilitated the transaction between Mr. Leaf and the seller, Mr. McIntyre. That strategy is seen clearly in the cross-examination at trial of Mr. Leaf by

- 11 -

Attorney Smith, as well as in the cross-examination of the police officers and agents who testified.

[] Attorney Smith did not render ineffective assistance with respect to this claim because he, in fact, sought and received information relating to the background of, and the consideration received by, Ronald Leaf. In any event, the cross-examination testimony of Mr. Leaf made clear that he had a criminal record, that he lied to [Seretti] in order to benefit himself, and that he was testifying in the hope of receiving a lighter sentence in unrelated cases.

Memorandum Opinion and Order of Court, 8/9/2013, at 10-11. Based upon the foregoing, it is clear not only that Seretti's claim lacks arguable merit, and a factual basis, but also that Seretti would be unable to establish prejudice for ineffective assistance of counsel purposes.

Our independent review of the record has revealed no other meritorious claims that Seretti, or his counsel, could have pursued in a PCRA proceeding. However, before granting counsel's motion to withdraw, we must address the claims raised in the written response to counsel's **Turner/Finley** letter and motion to withdraw as counsel that Seretti filed with this court. Therein, Seretti presented the following three issues that he believed warranted inclusion in an appeal to this Court:

I.      The trial court misapplied the law by failing to dismiss the Commonwealth's case for committing outrageous government-police sponsored misconduct because an unverified informant originated alleged buys and cell phone calls to entrap Mr. Seretti into protracted drug transactions in order to manipulate the court into applying an increased mandatory minimum sentencing.

II.     Both the trial and post-sentencing courts committed substantive errors and have abused their discretion, due to

dismissing Mr. Seretti's good faith claims without first holding an evidentiary hearing.

    A. The appellant raised substantial and exculpatory claims of innocence and of arguable merit which would have changed the outcome of the trial.

    B. Mr. Seretti was charged and convicted of a crime not thereof.

III.    [Seretti] was denied effective assistance of meaningful counsel at his trial/plea hearing, and was abandon[ed] by his court appointed appellate counsel in violation of his Sixth (6th) Amendment rights to have meaningful counsel.

    A. [Seretti] was denied his requested defense and was abandon[ed] in his efforts to secure subpoenas for the attendance of meaningful material witness[es] to introduce exculpatory evidence by all of his defense counsels in this matter.

Petitioner's Response to the Court Appointed Counsel's No-Merit Letter-Brief, his Application to withdraw as Counsel of Record; hereafter Petitioner's Application/Motion to Proceed on Appeal *Pro Se*, and the Permission to file a Brief for the Appellant/In Propria Personam . . . *Nunc Pro Tunc* ("Seretti's Response"), 2/25/2014, at 3.

    To the extent that Seretti is arguing that his counsel abandoned him for purposes of direct appeal, we have discussed that claim above, and have concluded that Seretti is not entitled to relief. What remains of these newly stated issues are waived, because Seretti did not raise these issues first in his PCRA petition.[2] **See** Pa.R.A.P. 302 ("Issues not raised in the lower court

_____

[2]    Although Seretti's first issue purportedly raises a challenge to the application of a mandatory minimum sentence, which normally implicates a

*(Footnote Continued Next Page)*

are waived and cannot be raised for the first time on appeal."). Thus, these issues cannot be raised for the first time in this appeal. Additionally, because these issues were not preserved in the lower court, we cannot conclude that counsel's no-merit letter was deficient for not pursuing them in this appeal.

PCRA order affirmed. Motion to withdraw as counsel granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/8/2014

---

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯

non-waivable challenge to the legality of his sentence, *see Commonwealth v. Harley*, 924 A.2d 1273, 1277 (Pa. Super. 2007), Seretti actually does not pursue such a claim. Upon closer inspection, Seretti focuses his argument upon the merits of an entrapment defense, and not upon the application of the mandatory minimum sentence. Seretti's Response, at 6-8. Thus, the issue is subject to our waiver principles.